588 So.2d 1025 (1991)
O'KON AND COMPANY, INC., Appellant,
v.
Robert A. RIEDEL, Robert C. Riedel, John Bloxham Smith, Jr., and John G. Wurst, d/b/a RSW Hotel Associates, Ltd., a partnership, Appellees.
No. 90-3755.
District Court of Appeal of Florida, First District.
November 1, 1991.
Barry Richard of Roberts, Baggett, LaFace & Richard, Tallahassee, for appellant.
Daniel S. Dearing, Tallahassee, for appellees.
SMITH, Judge.
This is an appeal and cross appeal from a final judgment finding that O'Kon and Company (O'Kon) was not entitled to *1026 an architectural fee and that appellees/cross appellants (RSW) were not entitled to recover on their claim of slander of title for O'Kon's wrongful filing of a statutory mechanic's lien, or their claim that the lien was willfully exaggerated and fraudulent. We affirm the appeal and cross appeal, but remand to the trial court for an award of attorney's fees to RSW, as RSW successfully resisted O'Kon's claim for mechanic's lien and is entitled to a fee under section 713.29, Florida Statutes (1987). Allen v. Scott, 358 So.2d 1112 (Fla. 1st DCA 1978).
O'Kon is a Georgia corporation engaged in the business of providing architectural and engineering services with respect to hotel projects. RSW proposed to construct a hotel on property in Leon County and contracted with O'Kon on December 1, 1984, for architectural, engineering and project management services. In the contract, O'Kon warranted that it was properly licensed to carry out the terms of the agreement. O'Kon's fee of $285,000 was made contingent upon RSW's obtaining a construction loan to build the project, except that $40,000 was paid initially.
O'Kon associated a Florida architect, Warren Dixon, and made him an officer of the corporation.[1] According to Dixon and James O'Kon, Dixon prepared all of the plans for the project or directly supervised the preparation of plans. On the other hand, there was testimony that Steve Chick, an unlicensed Florida architect, worked on the plans.
Plans were prepared for the project, but the project was suspended in early 1985 due to the failure of RSW to obtain financing. About a year later, Kingswood Tallahassee Partners, Inc. (Kingswood) contracted to purchase the land from RSW. O'Kon was approached by RSW and Kingswood about continuation of the project on a smaller scale.
All of the parties entered into a separate agreement titled the "Tri-Party Agreement." Pursuant to the agreement, O'Kon was to receive an additional $30,000 for redesigning the hotel, amounting to an increase in its fee from $285,000 to $315,000. O'Kon was to receive, and did receive, $75,000 immediately from Kingswood toward the fee. The Tri-Party Agreement also deleted two provisions from the original contract which had made O'Kon's fee contingent on financing. Paragraph 8 of the agreement provides in pertinent part:
If, after delivery of a complete set of revised plans and specifications, Kingswood shall abandon the hotel project, the $75,000 paid by Kingswood to O'Kon shall accrue to the benefit of RSW, the contract shall be assigned by Kingswood back to RSW, and Kingswood shall have no further liability or obligations whatsoever to O'Kon or any of its consultants with respect thereto.
After a second set of plans was nearly complete, Kingswood backed out and the project came to a halt. RSW eventually sold the property to another party. While the sale was pending, O'Kon caused a claim of lien to be filed of record against RSW's property. Before the claim of lien was filed, O'Kon inquired of a lawyer in Florida whether the lien could be filed. The lawyer advised that it could be filed and did file it. However, the lawyer was unaware that O'Kon was unlicensed and had not registered in Florida, contrary to section 481.219(1)(b), Florida Statutes (1987), when he gave this advice and subsequently filed the $162,000 claim of lien.
At the closing of the sale of RSW's property encumbered by O'Kon's lien, RSW was compelled to "bond out" the claim of lien by transferring the lien from real property to security and depositing $191,260 into the registry of the circuit court.
Thereafter, RSW filed this action alleging that the claim of lien was invalid and constituted slander of title, and that the lien was willfully exaggerated, bringing into play the statutory remedies of section 713.31, Florida Statutes (1987). O'Kon *1027 counterclaimed to enforce its mechanic's lien and for breach of contract.
The lower court granted partial summary judgment for RSW on O'Kon's claim, holding that because O'Kon had not registered with and was not licensed by the Florida Department of Professional Regulation, Board of Architecture, it was precluded from recovering for professional architectural services in Florida, citing Rolls v. Bliss & Nyitray, Inc., 408 So.2d 229, 234-235 (Fla. 3d DCA 1982). For the same reason, the court found that O'Kon could not perfect a claim of lien for such fees under the mechanic's lien law. The partial summary judgment was appealed to this court and affirmed in part and reversed in part. O'Kon and Co., Inc. v. Riedel, 540 So.2d 836 (Fla. 1st DCA 1988) (O'Kon I).
This court rejected the lower court's reliance on Rolls v. Bliss & Nyitray, and ruled alternatively that with respect to O'Kon's claim of lien, that the mechanic's lien statute itself, section 713.03(1), (2), Florida Statutes (1987), precluded a lien where O'Kon did not pursue certification pursuant to section 481.219(1)(b). However, the court reversed the partial summary judgment on O'Kon's claim for breach of contract and returned the cause for a trial on the merits of the claim.
On remand, after a non-jury trial, the trial court entered the final judgment on appeal. The trial court ruled that RSW was not obligated to pay O'Kon's fees, billed for the preparation of plans for Kingswood's unrealized development project, under the language of the Tri-Party Agreement. Alternatively, relying upon Rolls v. Bliss & Nyitray, the court ruled that even if the Tri-Party Agreement had obligated RSW to pay O'Kon's fees, the contract would be unenforceable by O'Kon because O'Kon had not complied with Chapter 481, governing the right to practice architecture in Florida. In particular, the court noted that O'Kon had never obtained a Florida certificate of authorization to perform architectural services as required by section 481.219(1)(b). Further, regarding O'Kon's contentions that it was substantially, though not technically, in compliance with Chapter 481, because Dixon, a Florida architect had prepared all the plans and drawings, the court found that in reality, Steve Chick, a member of O'Kon's Atlanta, Georgia, office who was not licensed in Florida, was the individual primarily responsible for the plans and oversight of the project. Regarding RSW's claims, the court found that O'Kon's claim of lien was not willfully exaggerated and that O'Kon's actions in filing the lien were not malicious and were protected by a qualified good faith privilege.
O'Kon admits that it neglected to register contrary to section 481.219(1)(b), but contends that all architectural work in this case was either done by Dixon, a Florida architect, or supervised by him, and that registration was a mere ministerial and technical act. O'Kon argues that these facts evidently persuaded this court to rule in O'Kon I that failure to register does not itself invalidate the underlying contract and that this court, accordingly, rejected the contrary views on this issue as expressed in Rolls v. Bliss & Nyitray. O'Kon maintains that in direct conflict with this court's opinion in O'Kon I, the lower court again erroneously relied on Rolls to reject O'Kon's claim.
Our interpretation of this court's opinion in O'Kon I differs from that of appellant. O'Kon I did not rule that failure of a corporation to register in Florida is a mere technical violation which, by itself, will not invalidate a contract for the payment of architectural fees. The court merely ruled that a partial summary judgment on the contract claim was inappropriate at that time. As we view our prior decision, the court was simply unwilling, on the record before it, to rule on the merits of the entire claim without the benefit of a trial at which the facts and issues could be more thoroughly and completely developed. This having now been accomplished, and the lower court having fully considered the issue, the matter is ripe for review.
Section 481.219(1) provides:
481.219 Certification of partnerships and corporations. 

*1028 (1) The practice of or the offer to practice architecture by licensees through a corporation or partnership offering architectural services to the public, or by a corporation or partnership offering architectural services to the public through licensees under this act as agents, employees, officers, or partners, is permitted, subject to the provisions of this act, provided that:
(a) One or more of the principal officers of the corporation or one or more partners of the partnership and all personnel of the corporation or partnership who act in its behalf as architects in this state are registered as provided by this act; and
(b) The corporation or partnership has been issued a certificate of authorization by the department as provided in s. 481.213. (emphasis supplied)
Section 481.223 provides in pertinent part:
(1) No person shall knowingly:
(a) Practice architecture unless the person is a registered architect;
Addressing first O'Kon's contentions that this case presents a mere technical violation of Chapter 481, we must respectfully disagree. The state regulates corporations seeking to provide architectural services through certification. Obviously, the Legislature thought it was important to provide for the regulation of both the individual and the corporate entity offering architectural services, as revealed by separate statutory criteria governing each. O'Kon I, 540 So.2d at 841. As we noted in O'Kon I, the language of section 481.219(1)(b) is straightforward and mandatory, and appellant has offered no good rationale for excising this requirement from this regulatory statute.
But even aside from the requirement of corporate certification, the record demonstrates a further violation of section 481.219. Specifically, at least one unlicensed architect, Steve Chick, came to Florida and worked on the plans in O'Kon's behalf, contrary to section 481.219(1)(a), which requires that all personnel who act as architects in this state must be registered as provided by the statute.[2] Accordingly, we agree with the trial court that O'Kon's contract for architectural services, which were performed in violation of Florida's licensing statute, was unenforceable in Florida under the rationale and in accordance with the authorities cited and discussed in Rolls v. Bliss & Nyitray, 408 So.2d at 233-235. Because the trial court's judgment is affirmable on this ground, we do not decide the correctness of the trial court's further ruling that the language of the Tri-Party Agreement did not obligate RSW for the fees.
With regard to the trial court's ruling on RSW's claim, we agree that the trial court's findings are supported by competent, substantial evidence in the record, and we will not disturb the trial court's resolution of these factual disputes.
AFFIRMED in part and REVERSED in part and REMANDED to the trial court for an award of fees pursuant to section 713.29, Florida Statutes.
ERVIN, J., concurs.
ALLEN, J., specially concurs.
ALLEN, Judge, specially concurring.
I agree with the result reached by the majority. However, I disagree with the majority's rationale for determining that the appellees are not obligated to pay the balance of the fees claimed by the appellant.
The majority suggests that the failure of a corporation or partnership to secure certification as provided in section 481.219(1)(b), Florida Statutes, absolutely bars the corporation or partnership from recovering contractual fees for architectural services. I disagree for two reasons.
*1029 First, it seems to me that the majority's suggestion is necessarily inconsistent with our decision in O'Kon and Co., Inc. v. Riedel, 540 So.2d 836 (Fla. 1st DCA 1988) (O'Kon I). There, the trial court had determined that the lack of certification was an absolute bar to the appellant's recovery of fees for architectural services, and had awarded summary judgment to the appellees. Although the appellant had conceded its lack of certification, we reversed the trial court's ruling, holding as follows:
* * * [T]he trial court's order goes too far in paragraph four where it declares that the contract is invalid and unenforceable at law. None of the pertinent statutes examined regarding licensing or liens require that the entire contract in question be invalidated at this time. There are still issues of fact that must be decided in regard to the contract. Therefore, paragraph four should be stricken from the order.
O'Kon I, 540 So.2d at 842. I am unable to square this holding with the majority's suggestion that lack of certification is an absolute bar to recovery under the same contract which was in issue in O'Kon I. If the O'Kon I court had believed lack of certification to be an absolute bar, it obviously would not have determined that resolution of the appellant's contract claim required additional fact finding.
It is therefore my view that O'Kon I necessarily presented this court with the following issue: Does the appellant corporation's failure to secure certification as prescribed in sections 481.213(4) and 481.219(1)(b), Florida Statutes, bar the corporation from recovering fees for architectural services? My reading of O'Kon I suggests that we answered this issue in the negative. But, even if the issue had not been answered in O'Kon I, and even if I did not therefore feel constrained by the principles of res judicata, law of the case, and stare decisis, I would still differ with the remedy fashioned by the majority. This brings me to the second basis for my disagreement with the majority on this point.
The remedy fashioned by the majority for the appellant's failure to comply with section 481.219, Florida Statutes, is unenforceability of the appellant's contract. (I use the term "fashioned" in the most literal sense because the remedy is not derived from a statute and there appears to be no precedent for applying it because of failure to comply with the particular statute involved in this case.) Although I agree that this remedy is appropriate for some violations of professional regulation statutes, I do not agree with the majority's suggestion that it is appropriate where a corporation or partnership has simply failed to secure the certification prescribed in section 481.219(1)(b).
The Rolls decision, upon which the majority relies, quotes from American Jurisprudence Second as to the circumstances under which failure to comply with architectural licensing statutes should result in unenforceability of contracts. The quote is as follows:
As in the case of professional and occupational licenses generally, the effect of the failure of an architect or one holding himself out as an architect to procure a license to practice his profession on the validity and enforceability of a contract for his services or upon his right to recover for services rendered depends, in the main, upon the purpose of the legislature in requiring the license. If the purpose in requiring the license is to furnish protection to the public by preventing incompetent persons from assuming to act in that particular capacity, the contract of an unlicensed person is invalid. Accordingly, the rule has been laid down that the failure of one holding himself out as an architect to procure a license required for public protection and to bar those lacking in the requisites of learning and skill precludes recovery for professional services rendered in his capacity as an architect.
Rolls v. Bliss & Nyitray, Inc., 408 So.2d at 234, quoting from 5 Am.Jur.2d Architects § 4.
Paragraph (1)(a) of section 481.219, prohibiting corporations from offering architectural services to the public unless at least one principal officer and all employees *1030 acting as architects in Florida are licensed, is intended to provide protection to the public from the incompetent practice of architecture. Therefore, in accordance with the principles quoted above, a corporation which fails to comply with this requirement should properly be denied enforcement of its contract for architectural fees.
Conversely, however, paragraph (1)(b) of the section, requiring certification by the department, does not appear to have a similar purpose. When paragraph (1)(b) is read in conjunction with section 481.213(4), it is apparent that certification is automatic where the corporation is in compliance with 481.219(1)(a). Thus, paragraph (1)(b) merely provides a mechanism for confirming compliance with paragraph (1)(a). Because (1)(b) does not prescribe any additional protection for the public, it does not fall within the class of regulatory statutes referred to in the above-quoted language from the Rolls decision. Because I am in agreement with that language, I cannot agree with the majority that a corporation which is otherwise fully in compliance with Chapter 481, Florida Statutes, should be denied compensation for architectural services merely because it fails to secure the certification to which it is entitled under section 481.219(1)(b).
As an alternative basis for its determination that the contract is unenforceable, the majority reason that the appellant also failed to comply with 481.219(1)(a), in that "at least one unlicensed architect, Steve Chick, came to Florida and worked on the plans in O'Kon's behalf." In footnote 2, the majority acknowledge that the record does not reflect that Mr. Chick was "primarily responsible for the project's plans and oversights."
I agree with the majority that the record reflects that Mr. Chick performed some services which might be within the section 481.203(6) definition of "architecture." I also agree that the record does not support the trial court's finding that Mr. Chick was the individual primarily responsible for the project's plans and oversight. In fact, the testimony from those witnesses personally familiar with the preparation of the architectural plans revealed that all of the drafting and architectural work was done by Warren Dixon, a Florida licensed architect, either personally or under his immediate supervision and direction.
The majority seem to read section 481.219(1)(a) to say that where a corporation contracts to provide architectural services through licensees, every corporate employee performing services coming within the 481.203(6) definition of architecture must be licensed. I disagree. My reading of Chapter 481 and the rules enacted thereunder reveals a regulatory scheme which anticipates that much of the work done in an architect's office can be done by unlicensed persons, so long as the work of the unlicensed persons is performed "under [the licensed architect's] responsible supervising control." See section 481.221(4), Florida Statutes, and Rule 21B-18.001, Florida Administrative Code. Accordingly, I would construe the 481.219(1)(a) provision requiring all corporate personnel acting as architects to be licensed to mean that all work must be done either personally or under the responsible supervising control of a Florida licensed architect. This construction would more closely comport with the regulatory scheme of the chapter, and I believe it is consistent with the language of the paragraph.
In the present case, the testimony revealed that the work was performed under the responsible supervising control of a Florida licensed architect. I would therefore determine that there was no violation of section 481.219(1)(a).
Nevertheless, I agree with the majority that the final judgment should be affirmed. I would affirm the final judgment because the record supports the trial court's construction of the ambiguous terms of the "Tri-Party Agreement."
NOTES
[1] In O'Kon's statement of the facts, O'Kon recites that Dixon was made vice-president in charge of O'Kon's Florida architecture division.
[2] We find some merit in appellant's argument that the trial court's finding that Steve Chick was the individual primarily responsible for the project's plans and oversights has no express written support in the record. However, this is not a critical factor in our decision since the record clearly demonstrates that Chick, an unlicensed Florida architect, participated in the preparation of the plans and gave his professional assistance on the project in Florida.