890 So.2d 1155 (2004)
The DISTRICT BOARD OF TRUSTEES, etc., Appellant,
v.
Don R. MORGAN, etc., Appellee.
No. 5D03-3902.
District Court of Appeal of Florida, Fifth District.
December 17, 2004.
Rehearing Denied January 19, 2005.
Wendy Vomacka and David C. Willis of Rumberger, Kirk & Caldwell, Orlando, for Appellant.
Peter Robertson and T.J. Frasier of the Robertson Group, Gainesville, for Appellee.
MONACO, J.
The District Board of Trustees of St. Johns River Community College appeals the final judgment rendered by the trial court after a jury trial. The appellee is an architect who had entered into a contract for the provision of professional services to the College, and the underlying dispute involved whether the architect was entitled to payment for certain work performed. While we affirm the judgment, we write to *1156 address an issue that in some respects brings us into conflict with our sister court in the First District. The issue concerns whether a contract entered into between the College and a partnership comprised of two fully licensed Florida architects who never obtained the certificate of authorization described by section 481.219, Florida Statutes (1999), is void ab initio, and is therefore unenforceable by the architects. We conclude that the contract was only voidable, not void, and was accordingly enforceable while it was still in existence.
We recite only the facts necessary to adjudicate this particular issue on appeal. Essentially, in April of 1999, the College entered into an AIA "Standard Form of Agreement Between Owner and Architect" with Morgan-Stresing Associates ("MSA"). The agreement, which was signed both by the appellee, Don Morgan, and by his purported partner, Paul Stresing, concerned the design and preparation of bidding documents associated with the construction of the St. Johns River Community College's visual and performing arts complex. Mr. Morgan and Mr. Stresing are both licensed Florida architects, having met the requirements of section 481.213, Florida Statutes (1999). The problem is that their partnership, MSA, never obtained a certificate of authorization, as is required by section 481.219, Florida Statutes (1999).
Section 481.219 allows architecture to be practiced through a corporation or a partnership, subject to certain conditions having been met. Subsection (2) of the statute reads in pertinent part as follows:
For the purposes of this section, a certificate of authorization shall be required for a corporation, partnership, or person practicing under a fictitious name, offering architectural services to the public jointly or separately. However, when an individual is practicing architecture in her or his own name, she or he shall not be required to be certified under this section.
Apparently, although contemplating the formation of a partnership to complete this work, the two principals of MSA were never able to fully consummate their arrangement, and MSA never obtained a certificate of authorization.
After the architects had completed about 70% of their contract work, they were terminated by the College. When this suit was commenced, the College counterclaimed and asserted a number of affirmative defenses in which, among other things, it pointed out that MSA had failed to obtain a certificate of authorization. Thus, they posited, the contract was void ab initio, and was obtained by fraud in the inducement. MSA conceded that it had actively represented to the College that both Mr. Morgan and Mr. Stresing would devote their time as principals to the project. They claimed, however, that they were in the process of obtaining the certificate of authorization at the time of the termination. They argued that the College was simply looking for a way to use the plans prepared by Mr. Morgan and Mr. Stresing without paying full price.
It appears that the Board of Trustees had knowledge as early as December of 1999, that Mr. Morgan and Mr. Stresing were not "partners," and that a certificate had not been obtained. There is also testimony, however, that the two men were told by the College to continue to work together on the project, and to try to develop a resolution of the partnership issue. In June of 2000, the College wrote to the attorney representing the architects telling them to cure the certificate of authorization problem by June 30. MSA failed to meet that deadline. Curiously, on July 11, 2000, Mr. Morgan delivered to the College the plans and specifications that *1157 he described as completed phase 3 documents. The plans and specifications appear to have been accepted and put to use by the College.
The evidence also indicated that five weeks later Mr. Morgan and his attorney attended a meeting of the Board of Trustees, and Mr. Morgan and Mr. Stresing provided proposed modifications to the original contract in which they offered three different solutions to the problem caused by the lack of a certificate of authorization. The architects first proposed that the contract be modified so that Mr. Morgan individually would be the "architect," and Mr. Stresing would be a "consultant," with both parties being in privity with the College, and both continuing to work on the project. The second option was to amend the contract so that each individual would be recognized as an architect on the project. Finally, they suggested that if neither of these options was acceptable, they be given a little more time to obtain the certificate of authorization under the MSA name. The Board rejected the proposals, terminated the contract, and hired a new architect. Significantly, however, there was evidence that the College consciously elected to use the MSA plans, and turned those plans over to its new architect. In addition, the College paid consultants money that was owed to MSA.
The jury found on the counterclaim of the College that the architects had in fact obtained the contract by fraud, and that the College had suffered damages of $61,476.58, as a result. The jury also found, however, that the College breached the contract it had with MSA, and that MSA suffered damages of $413,049.68. After the damages were adjusted accordingly, and a final judgment in favor of the architect was rendered, this appeal ensued.[1]
The College argues that the final judgment should be reversed because the contract between the College and MSA was in violation of statute, and was, therefore, void and not enforceable by MSA. The College relies on the failure of MSA to obtain a certificate of authorization in support of its theory that the contract was void. The foundation for this proposition is O'Kon and Company, Inc. v. Riedel, 588 So.2d 1025 (Fla. 1st DCA 1991).
O'Kon was a Georgia corporation engaged in the business of providing architectural and engineering services. It decided to venture into Florida for work. In addition to hiring a licensed Florida architect, O'Kon hired an unlicensed architect living in Florida to work on the plans. O'Kon, however, had not registered in Florida, and had not received a certificate of authorization, contrary to section 481.219. After the developer decided to abandon the project and not pay its architects, O'Kon filed a claim of lien against the real property that was the subject of its contract, and also sought to collect on its contract claim, even though it was unlicensed and unregistered in this state. O'Kon argued that all the architectural work in the case was either done by the Florida licensed architect or supervised by him (O'Kon being the principal), and that registration was a mere ministerial and technical act. There was, however, testimony that one unlicensed architect had, indeed, worked on the plans.
*1158 Initially, a summary judgment was rendered in favor of the developer on both its mechanic's lien[2] claim and its contract claim. The First District Court of Appeal affirmed with respect to the mechanic's lien claim, and held that the architect was precluded from asserting a lien because it was in violation of section 713.03(1) and (2), Florida Statutes (1987). Of greater importance for our purposes, however, the appellate court reversed the summary judgment on the contract claim, and remanded for a trial on the merits. See O'Kon and Co., Inc. v. Riedel, 540 So.2d 836 (Fla. 1st DCA 1988)("O'Kon I"). The First District noted that the trial court's order "goes too far ... where it declares that the contract is invalid and unenforceable at law." The court found that there were issues of fact to be decided because, "none of the pertinent statutes examined regarding licensing or liens require that the entire contract in question be invalidated at this time." Id. at 842. The matter was then remanded to the trial court for consideration of the contract claim.
After a non-jury trial, the trial court again ruled in favor of the developer. One of the alternative rulings of the trial court was that the contract under which the architect sought damages was unenforceable because the architect had failed to obtain the certificate of authorization described in section 481.219. The architect again appealed. The First District this time held that the certificate of authorization was not simply a technical requirement, and that the language of the statute was mandatory. More importantly, however, the court held that the employment of an unlicensed architect to work on the plans was a violation of the state's "licensing statute," and justified the conclusion that the contract was unenforceable. See O'Kon and Co., Inc. v. Riedel, 588 So.2d 1025 (Fla. 1st DCA 1991) ("O'Kon II").
The problem is that both Mr. Morgan and Mr. Stresing, the sum total of persons offering architecture services through MSA, are both fully licensed by the State of Florida as architects. The licensing statute for architects is section 481.213, not section 481.219. There was no evidence submitted below that any other person was employed by MSA for the purpose of being involved with the preparation of the plans and specifications for the Community College project. Thus, Mr. Morgan and Mr. Stresing did not violate a "licensing statute" when they failed to obtain a certificate of authorization. They both had licenses. While we have no difficulty in concluding that unlicensed persons have no right to enforce a contract for services that require a license, the present case is simply not one involving unlicensed architects. See Alfred Karram, III, Inc. v. Cantor, 634 So.2d 210 (Fla. 4th DCA 1994); Rolls v. Bliss & Nyitray, 408 So.2d 229 (Fla. 3d DCA 1981), dism., 415 So.2d 1359 (1982). Because there was substantial competent evidence that all persons working on the project under the MSA banner were fully licensed; and that the College was fully aware of the lack of a certificate of authorization for months before they terminated the contract; and that the College accepted the work produced by MSA well after it became aware of the lack of a certificate, there was no risk that professional architectural services would be foisted on the public, in general, and on the College, in particular, by unlicensed persons. To blindly adopt the O'Kon II rationale under these circumstances would, in our judgment, be unjust, and would elevate form over substance.
*1159 We find ourselves in closer agreement with the holding in O'Kon I, and with Judge Allen's well-reasoned special concurrence in O'Kon II. As Judge Allen pointed out, the language of section 481.219 does not compel a conclusion that a failure to obtain the certificate of authorization invalidates a contract by the architectural organization ab initio. In fact, section 481.205, Florida Statutes, appears to indicate that enforcement of the licensing and other statutes contained in chapter 481 is placed in the hands of the Board of Architecture and Interior Design. Thus, if there is a disciplinary action to be taken against Mr. Morgan, Mr. Stresing or MSA for failure to obtain a certificate of authorization, then the Board of Architecture and Interior Design is the body designated by the legislature to take that action. Voiding the contract after hundreds of thousands of dollars of work was performed and accepted just does not pass the smell test. As the trial judge cogently noted in denying the motion of the College for a directed verdict:
But it seems patently unfair to contend they (MSA) didn't have the legal authority to produce the product, and then you (the College) take the product, and then claim they can't sue you to get paid for the property that you've taken.
The fairer way to conceptualize an agreement tainted by non-compliance with section 481.219 is to consider the contract to be voidable, in much the same way that fraudulent inducement renders a contract voidable, but not void. See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So.2d 306 (Fla.2000). Since the licensing of architects is addressed by a different statute, it is clear that section 481.219 was not intended by the legislature to assure that all architects working in Florida are licensed. Rather, a plain reading of section 481.219 indicates that its intention is to avoid a misrepresentation regarding the composition of architectural business entities that enter contracts for work on Florida projects. If preventing misrepresentation is the goal, then Mazzoni Farms teaches that contracts in violation of section 481.219 are merely voidable, not void.
Here, there was ample evidence from which the jury could find that the College was aware of the non-compliance with the statute, yet chose to continue to operate under the contract and to benefit by it. While the College may well have been able to void the contract when it learned of the statutory non-compliance, it did not have the luxury of waiting month after month to pull the trigger, all the while accepting the work of the architects in the interim.
Our review of a somewhat analogous chapter of the Florida Statutes tends to confirm our view. Section 489.128, Florida Statutes (1999), indicates that contracts performed in full or in part by a contractor who fails to obtain or maintain a license "shall be unenforceable in law or in equity." Contractors are then given the opportunity to obtain or reinstate the necessary license, in which case the contract is enforceable. As to construction contractors, therefore, the legislature specifically provided that contracts by unlicensed persons are void. No similar language is found in Chapter 481. Later, however, the legislature added section 489.128(1)(b), Florida Statutes, providing that a "business organization shall not be considered unlicensed for failing to have a certificate of authority as required by sections 489.119 and 489.127." Thus, it seems clear that the legislature never intended the absence of a certificate of authority mandatorily to invalidate contracts, provided the building professionals involved are licensed. See Martin Daytona Corp. v. *1160 Strickland Constr. Servs., 881 So.2d 686 (Fla. 5th DCA 2004).
Finally, we note that the College sought and received damages for fraudulent inducement. The fraud alleged was the misrepresentation of the architects about their business relationship. Consistent with the proposition that fraudulent inducement renders a contract voidable, not void, Florida law provides an election of remedies where fraudulent inducement is claimed. The wronged party may either repudiate the contract and seek rescission, or ratify the contract and seek damages. See Mazzoni Farms; Deemer v. Hallett Pontiac, Inc., 288 So.2d 526 (Fla. 3d DCA 1974). As the Supreme Court has indicated, "This principle ensures that a party who `accepts the proceeds and benefits of a contract' remains subject to `the burdens the contract places upon him.'" See Mazzoni Farms, 761 So.2d at 313 (quoting Fineberg v. Kline, 542 So.2d 1002, 1004 (Fla. 3d DCA 1988)). Here, the College ratified the contract. Having done so, it cannot be heard to complain because the jury agreed and found that the contract was enforceable by both parties.
In substance, therefore, what we hold is that there is no automatic avoidance of a contract because of a violation of section 481.219; in as much as such contracts are only voidable, at the election of the non-offending party. The contract might very well be voided, depending on the circumstances, but that conclusion is frequently fact dependent. Such is the case here. The jury heard and considered the evidence, and found that while the architects may have committed a fraud in inducing the contract, the College had breached the contract while it was still viable. As there is substantial competent evidence in the record to support that finding, we have no reason to second-guess the outcome.
To the extent that the opinion in O'Kon II renders void and unenforceable all architectural contracts that are entered into by an architectural business organization that fails to obtain a section 481.219 certificate of authorization, we certify conflict.
AFFIRMED.
SHARP, W., and TORPY, J.J., concur.
NOTES
[1] As the Florida Supreme Court has held that an action for fraudulent inducement into a contract and breach of that same contract are not mutually exclusive, we are not inclined to revisit that issue, even though it is raised by the College. See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996); see also Williams v. Peak Resorts, Int'l, Inc., 676 So.2d 513 (Fla. 5th DCA 1996).
[2] Now referred to as a construction lien in chapter 713, Florida Statutes.