WELLS, Judge.
 

 AWA-BC, LLC (“AWA”) appeals from a summary final judgment rescinding an agreement between it and Alan Amiel d/b/a Vanana 1, Vanana 2 and Vanana 3. We reverse because no legal basis exists for rescinding the parties’ agreement and because disputed material fact issues exist on AWA’s breach of contract claim.
 

 This action arises from a single page, hand-written agreement for the sale of AWA’s business and the transfer of AWA’s lease of the premises from which
 
 *9
 
 the business was being conducted. That agreement, in its entirety, provided:
 

 Agreement
 

 1 AWA USA agreed to transfer lease of 2308 N.W. 5th Ave to Aan Aniel at the price of 80.000. provided lease is good till 2013.
 

 2 Aan Amiel will pay for the lease the amount of 80.000 in payment as scheduled below
 

 3 5.000 $ today 1-8-07 paid 15.000 $ on signing of the transfer cash on 1-9 5.000 $ evry [sic] 1st of the month starting February 1st 2007
 

 4 AWA will transfer the lease and the deposit and location on or before Jan 10th 07.
 

 5 AWA will transfer the location to Aan includ[ing] all the phone system — alarm—all cameras and equip. A1 track light & fixture[s] all brackets and fixture[s] against the wall in entrance. Shelving in back room and side room all counters in front & etc.
 

 Signed on 1-9-07
 

 Payment of 20.000 cash was given to Yehuda
 

 Signed: [Alen Amiel] Signed [Not legible by AWA]
 

 The day after this agreement was signed, Amiel, without receiving an assignment of the lease or any approval of its occupancy by AWA’s landlord, moved into AWA’s space and began to conduct business as contemplated by the agreement. For the next seven months, Amiel operated its business from AWA’s space, paying rent directly to AWA’s landlord. In August 2007, Amiel stopped paying rent. AWA promptly gave notice to Amiel to vacate the premises and started paying the rent. AWA then brought suit to evict Amiel from the premises and for damages for breach of the parties’ January 8th agreement. The complaint subsequently was amended to seek attorney fees related to the eviction process, to add a count for recovery of an amount allegedly due on another unpaid debt in the amount of $9,441, and to add a count for unjust enrichment.
 

 Amiel counterclaimed for rescission, claiming that AWA had breached the parties’ agreement by failing to secure the landlord’s approval of AWA’s “assignment” of its lease to Amiel
 
 [1]
 
 :
 

 4. Pursuant to the agreement AWA was required to assign the premises[’] lease to Amiel (which was the primary asset purchased), and obtain the Master Landlord’s consent to the assignment,
 
 *10
 
 said consent constituting a condition precedent to the transfer of the lease from AWA to Amiel.
 

 [[Image here]]
 

 6. AWA failed to obtain the consent of the Master Landlord to the assignment of the Lease within a reasonable time. Moreover, Amiel learned that AWA in fact concealed the Amiel/AWA agreement from the Master Landlord all together [sic] by lying to it and advising that Amiel was part of AWA.
 

 7. Based on the foregoing, Amiel is entitled to rescind the parties’ agreement and be restored to his former position, namely, all purchase money should be returned to Amiel and he should be refunded all funds paid to the Master Landlord.
 

 In May 2008, Amiel moved for summary judgment on its counterclaim for rescission. That motion claimed that the transfer of AWA’s lease to Amiel was an important part of the parties’ agreement and that, because “AWA immediately breached the Purchase Agreement by failing to obtain the landlord’s consent to the assignment of the Lease on 1/10/07 or within a reasonable time thereafter and remained in breach throughout Amiel’s occupancy of the Space,” Amiel was “entitled to a refund of the money paid AWA subject to such amounts as are required to restore the parties to the 1/9/07
 
 status quo.”
 
 AWA also moved for summary judgment, claiming that the failure to secure an assignment from its landlord was immaterial because the landlord was on notice of Amiel’s occupancy and was content to permit Am-iel to occupy the premises as long as the rent was being paid. AWA also claimed that Amiel was not harmed as a consequence of its failure to secure an assignment where Amiel vacated the premises and abandoned the business, not because the landlord was demanding that he leave or because the rent was not being paid, but because he was not making enough money to pay the rent.
 

 On February 2, 2009, the lower court granted summary judgment in favor of Amiel on his rescission counterclaim concluding that AWA’s failure to secure the landlord’s consent to assignment of the lease justified rescission of the parties’ agreement:
 

 AWA’s failure to obtain landlord consent also constituted a breach of a material term of the purchase agreement which continued throughout Amiel’s occupancy of the premises. Amiel waited for eight month[s] for the lease to be transferred to him relying on [AWA’s] continuing promises that it was “coming” and provided AWA with ample opportunity to cure its breach. Amiel was justified in moving out and demanding his money back.[
 
 2
 
 ]
 

 In order to grant rescission, both parties must be restored to their pre-con-tract
 
 status quo.
 

 (Footnote omitted) (citations omitted). Based on Amiel’s stipulations that he owed AWA money for unpaid debt and for the period he occupied the premises without paying rent, the lower court entered summary judgment in AWA’s favor on its claims for unpaid debt and unjust enrichment. The lower court dismissed AWA’s claim for attorney’s fees related to the eviction process, finding no merit to the claim.
 

 For the following reasons, we reverse that portion of the final summary judgment rescinding the agreement between
 
 *11
 
 the parties and remand for further proceedings on AWA’s breach of contract claim.
 

 We reverse because there is no legal basis to support rescission of this agreement. “The rule is well settled in this country that cancellation or rescission will not be granted for breach of contract, in the absence of fraud, mistake, undue influence, multiplicity of suits, cloud on title, trust, or some other independent ground for equitable interference.”
 
 Richard Bertram & Co. v. Barrett,
 
 155 So.2d 409, 411-12 (Fla. 1st DCA 1963) (citing
 
 Int’l Realty Assocs. v. McAdoo,
 
 87 Fla. 1, 99 So. 117 (1924));
 
 Bass v. Farish,
 
 616 So.2d 1146, 1147 (Fla. 4th DCA 1993) (“Courts of equity will rescind an instrument upon fraud, accident or mistake.”). While an agreement may be rescinded for fraud relating to an existing fact, as a general rule, rescission will not be granted “for failure to perform a covenant or promise to do an act in the future, unless the covenant breached is a dependent one.”
 
 Steak House, Inc. v. Barnett,
 
 65 So.2d 736, 737 (Fla.1953). “A covenant is dependent where it goes to the whole consideration of the contract; where it is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted.”
 
 Id.
 
 at 738.
 

 No fraud, mistake, undue influence, multiplicity of suits, cloud on title, trust, or other independent ground for equitable interference has been alleged in this ease. And, while Amiel claims that assignment of the lease was central to its agreement with AWA, Amiel admitted in its answer that the $80,000 it agreed to pay to AWA was not just for the privilege of assuming AWA’s lease, but also for the purpose of purchasing AWA’s business. Assignment of the lease was not, therefore, the “whole consideration” for this agreement. Nor did AWA’s failure to secure some form of express approval from the landlord of Am-iel’s tenancy destroy the entire AWA/Am-iel contract. Amiel did, in fact, occupy the premises and conduct its business without interference from the landlord or anyone else for seven months. There is no indication that Amiel was forced to vacate the space or abandon its business because this condition had not been satisfied. And, there is no evidence that the landlord’s approval of Amiel’s tenancy was such an “indispensable part of what
 
 both
 
 parties intended that the contract would not have been made with the covenant omitted.”
 
 Id.
 
 (emphasis added).
 

 Even if this condition was so indispensable that no contract would have been made without it, Amiel’s actions in accepting the benefits of this contract for seven months after learning that landlord approval had not been (and was not being) obtained, constituted a waiver of the right to rescind. As this Court long ago confirmed, where a party seeking rescission has discovered grounds for rescinding an agreement and “either remains silent when he should speak or in any manner recognizes the contract as binding upon him, ratifies or accepts the benefits thereof, he will be held to have waived his right to rescind.”
 
 Steinberg v. Bay Terrace Apartment Hotel, Inc.,
 
 375 So.2d 1089, 1092 (Fla. 3d DCA 1979) (quoting
 
 Rood Co., Inc. v. Bd. of Pub. Instruction of Dade County,
 
 102 So.2d 139, 141 (Fla.1958)). In short, because Amiel’s counterclaim sounds solely in breach of contract, the judgment rescinding its agreement with AWA must be reversed.
 

 It also must be reversed because there is a factual dispute as to whether AWA breached this agreement.
 
 See, e.g.,
 
 
 *12
 

 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000) (“Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law.”);
 
 Martin v. Adorno & Yoss, L.L.P.,
 
 983 So.2d 744, 745 (Fla. 3d DCA 2008) (finding summary judgment was inappropriate where issues of material fact remained to be resolved);
 
 Raul Distribs., Inc. v. Fast Air Carrier, Ltd.,
 
 450 So.2d 598, 599 (Fla. 3d DCA 1984) (“It is axiomatic that summary judgment is inappropriate where the record reflects the existence of conflicting issues of material fact.”). AWA claims that, while it did not secure the landlord's written approval to assign its lease to Amiel, the landlord was aware of Amiel’s tenancy and acquiesced in it. It supports this argument with evidence that: (1) in January 2007, AWA told the landlord’s property manager, its agent, about AWA’s agreement with Am-iel and that Amiel would be the tenant for the premises going forward; (2) upon assuming occupancy of the premises, Amiel changed the signage outside the store, putting the world on notice that there was a new occupant in the store; (3) after taking control of the business and premises, Am-iel noticeably changed the inventory from that previously sold by AWA; and (4) Amiel changed the personnel at the store, all of which was visible to the landlord’s property manager, who often frequented the store. Amiel also made rent payments directly to the landlord. AWA claims this evidence confirms knowledge and acquiescence on the landlord’s part.
 

 Amiel, of course, disputes these facts, claiming that AWA misrepresented its relationship with Amiel to the landlord, telling the landlord that Amiel was “part of AWA.” One of AWA’s principals plainly denies any such representation. Amiel also argues that a change in signage, inventory, and personnel cannot be viewed as knowledge of Amiel’s tenancy and acquiescence to it on the landlord’s part. There is, therefore, a factual dispute regarding whether the landlord acquiesced to Amiel’s tenancy, an issue that lies at the heart of this case which cannot be resolved on summary judgment.
 
 [3]
 

 Accordingly, that portion of the final summary judgment rescinding the agreement between the parties is reversed, and the cause remanded for further proceedings on AWA’s breach of contract claim.
 

 Reversed and remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . The space that Amiel was to occúpy under the parties’ agreement was leased by AWA for a period of seven years, from March 1, 2005 to February 28, 2013. That lease authorized assignment but only with the landlord’s consent:
 

 16. RELETTING AND CANCELLATION FEE. Tenant my [sic] request in writing the consent of the Landlord to cancel, assign the Lease contract or to sublet. Subletting and assigning this Lease Contract will be permitted only with the prior written consent of the Landlord. In the event of subletting or assignment, the Landlord reserves the right to approve the persons or persons seeking to sublet or take an assignment of this Lease Agreement and to require a separate Security Deposit.
 

 [2]
 

 . This determination was made over an affidavit in which AVVA's representative averred that Amiel did not request the assignment until after he had stopped paying rent and AWA told him that it was going to sue to evict.
 

 [3]
 

 . Moreover, even if AWA breached the agreement because the landlord had no knowledge of Amiel’s tenancy and therefore did not agree to it, it appears that Amiel may not have suffered any harm from that breach. The record is that Amiel voluntarily abandoned the premises; it was not forced to leave because the landlord refused to approve its tenancy. Thus, it appears that Amiel may have suffered no compensable injury as a consequence of any failure to secure the landlord’s written consent. See
 
 Rollins, Inc. v. Butland,
 
 951 So.2d 860, 876 (Fla. 2d DCA 2006) ("The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.”);
 
 Knowles v. C.I.T. Corp.,
 
 346 So.2d 1042, 1043 (Fla. 1st DCA 1977) ("It is elementary that in order to recover on a claim for breach of contract the burden is upon the claimant to prove by a preponderance of the evidence the existence of a contract, a breach thereof and damages flowing from the breach.”). Even if there are damages, they are subject to mitigation.