DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BUYER'S CHOICE AUTO SALES, LLC,**
Appellant/Cross-Appellee,

v.

**PALM BEACH MOTORS, LLC,**
Appellee/Cross-Appellant.

No. 4D2023-0147

[July 17, 2024]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 502020CA012552XXXXMB.

Kevin F. Richardson of Clyatt & Richardson, P.A., West Palm Beach, for appellant/cross-appellee.

Mark Tinker of Cole, Scott & Kissane, P.A., Tampa, and Lissette Gonzalez, of Cole, Scott & Kissane, P.A., Miami, for appellee/cross-appellant.

FORST, J.

Buyer's Choice Auto Sales, LLC ("Landlord") appeals the trial court's final judgment entered in Palm Beach Motors, LLC's ("Tenant") favor because Landlord failed to install fencing around the premises where Tenant leased and operated its used car lot business. Landlord promised to install fencing when Tenant renewed its commercial property lease ("the Lease"). However, when Landlord did not build the fence, Tenant terminated the Lease, stopped paying rent, and sued for misrepresentation and breach of contract.

Following a bench trial, the trial court determined Landlord fraudulently and negligently induced Tenant to renew the Lease because Landlord had no intent of installing the fence and Landlord breached the Lease by failing to timely install the fence. The trial court permitted Tenant to terminate the Lease without penalty, ordered Landlord to refund the rental payments that Tenant paid during the pre-termination occupancy period, and excused Tenant's nonpayment of rent during the post-termination occupancy period.

On appeal, Landlord has conceded that Tenant could terminate the Lease due to Landlord's failure to install fencing. But Landlord challenges the trial court's decision to return all pre-termination rental payments to Tenant and excuse Tenant from paying any rent during the post-termination occupancy period. We agree that Landlord breached the Lease by failing to timely build the promised fence. However, the lack of fencing did not render the leased premises wholly untenantable under section 83.201, Florida Statutes (2020)—the rent withholding statute—and thus, Landlord was entitled to receive rent from Tenant for both the pre-termination and post-termination occupancy periods. We therefore reverse the trial court with respect to the rent payment issue.

Additionally, Tenant ratified the Lease and benefitted by continuing to operate its business without fencing during the post-termination occupancy period. As a result, Tenant is subjected to the burdens that the Lease imposed. Accordingly, we remand for the trial court to address recovery of property taxes and cleanup expenses and return of Tenant's security deposit. We affirm on all other issues raised by Landlord in its appeal and by Tenant in its cross-appeal not addressed herein.

## Background

For several years, Tenant rented the leased premises from Landlord to operate Tenant's used car lot business. As the existing commercial lease agreement was approaching renewal, Landlord and Tenant discussed installing fencing around the leased premises. Tenant wanted fencing installed, which was "an absolute requirement," because Tenant's business was falling victim to theft and vandalism. Despite Landlord's initial reluctance to install fencing, Landlord ultimately agreed and handwrote the following provision onto the Lease, which the parties then signed:

> Landlord will pay to install a fence around the property at a cost of market value. With a minimum of six bids. Simultaneously [T]enant shall provide and install landscaping as per the plan submitted to Lake Worth Beach.

Following the Lease renewal, both Landlord and Tenant contacted fencing contractors to receive bids. Tenant retained a landscaper to clear vegetation from the premises in preparation for fence installation.

Landlord and Tenant regularly communicated via text message regarding fence installation status, but no fence was ever installed. During one text message exchange, Landlord had expressed readiness to install the fence. Yet not only was Landlord not ready, but by the time Landlord

2

sent this text message, Landlord had not even applied for a fencing permit. During another communication, which included Landlord's counsel, Tenant was informed that the fence would be "started this week," but Landlord had still not applied for the required fencing permit.

At no point within written communications between the parties or between their counsels did Tenant (1) declare the premises to be "wholly untenantable" due to lack of fencing; (2) specify that Landlord had twenty days to install the fence; and/or (3) express Tenant's intent to withhold future rent until the fencing was in place—all statutory elements required to withhold rent pursuant to section 83.201, Florida Statutes (2020), the statute governing nonresidential tenancies. Nor does the Lease reference this statute or Tenant's right to withhold rent. In fact, prior to the renewal, Tenant's used car lot business operated for several years out of the unfenced leased premises.

Nearly a year after the renewed Lease commenced (the pre-termination period), Tenant sued Landlord for fraudulent misrepresentation, negligent misrepresentation, and breach of contract. Tenant sought to have the Lease "deemed void and enforceable" by alleging that Landlord fraudulently induced Tenant to enter the Lease and negligently misrepresented an intent to install fencing when Landlord had no intent of doing so. The Lease's "Remedies" section permits a non-defaulting party to terminate and cancel the Lease in an "Event of Default," defined as "failure of either party to perform any other covenant, condition, agreement or provision contained herein within fifteen (15) days after receipt by that party of written notice of such failure . . . ."

When Tenant filed the underlying suit, Tenant was current on its rental payments under the Lease—paying Landlord a total of $87,862.50 during the pre-termination occupancy period. However, starting the following month, Tenant submitted no additional rental payments and withheld rent during the post-termination occupancy period. Consequently, Landlord counterclaimed for unpaid rent and other relief.

Both parties sought damages for their claims. Tenant's breach claim sought vandalism and theft damages to its vehicle inventory stemming from Landlord's failure to install fencing. The trial court denied this request, finding that Tenant presented "speculative" evidence. Nevertheless, the trial court relied on the Lease's "Remedies" section to determine that Landlord's failure to install fencing breached the Lease and Tenant had the right to terminate the Lease without penalty.

Tenant also sought return of the total $87,862.50 rent which it had paid during the pre-termination occupancy period. The trial court awarded this $87,862.50 to Tenant with the explanation that, because

"[t]he [Landlord]'s breach preceded [Tenant]'s nonpayment of rent, therefore [Tenant]'s nonpayment d[id] not constitute a breach."

The trial court also determined that Tenant was legally entitled to withhold rent, finding that Tenant had complied with both the Lease's and section 83.201's requirements. Specifically, the trial court found that "[Tenant] notified [Landlord], in writing (of the breach[)]"; "[Landlord]'s breach rendered the premises untenantable due to security risks, threats of vandalism, theft, and damage"; and "Florida law allows a party to withhold rent until the landlord fulfills their obligations under the lease." To support the rent withholding conclusion, the final judgment cited the Lease, a text message between Tenant and Landlord, and an official notice authored by Tenant's counsel.

Landlord's counterclaim sought compensation for unpaid rent, real estate taxes, and cleanup fees, and Landlord presented evidence of these expenditures at trial. The Lease specified that Tenant is responsible for payment of property taxes and keeping the exterior fronts, sidewalks, and rear of the leased premises "in a neat and orderly condition" and "free from debris and rubbish." Ultimately the trial court concluded that Landlord could not recover any damages under the Lease because of Landlord's fraudulent and negligent inducement of Tenant into the Lease and the subsequent breach of lease. This appeal and cross-appeal timely follow.

## Analysis

A trial court's factual findings must be supported by competent substantial evidence, but its legal findings are reviewed de novo. *See Greenberg v. Bekins of S. Fla.*, 337 So. 3d 372, 375 (Fla. 4th DCA 2022). To the extent facts are undisputed, the application of legal principles to those facts is reviewed de novo. *See Allstate Fire & Cas. Ins. Co. v. Castro*, 351 So. 3d 127, 130 (Fla. 1st DCA 2022).

**A.** *Despite Landlord's Breach and Fraudulent and Negligent Inducement, Tenant Ratified the Lease*

From the outset, we affirm the trial court's holding that Landlord fraudulently and negligently induced Tenant into the Lease. On appeal, Landlord relies on the "independent tort doctrine" to challenge that holding. However, this argument was not raised below outside of Landlord's motion for rehearing. An argument raised for the first time in a motion for rehearing will not preserve the argument for appellate review. *See Best v. Educ. Affiliates, Inc.*, 82 So. 3d 143, 146 (Fla. 4th DCA 2012).

4

Notwithstanding the fraudulent and negligent inducement finding, "fraudulent inducement renders a contract voidable, not void." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000). A party's election to sue for damages on a contract, even one procured by fraud, ratifies the contract and "ensures that a party who 'accepts the proceeds and benefits of a contract' remains subject to 'the burdens the contract places upon him.'" *See id.* (quoting *Fineberg v. Kline*, 542 So. 2d 1002, 1004 (Fla. 3d DCA 1988)); *see also Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005).

Here, even though Tenant sued to terminate the Lease, Tenant also sued Landlord for breach of contract damages stemming from Landlord's failure to install fencing. Tenant nevertheless accepted the benefits that the leased premises provided to Tenant's used car lot business during the pre-termination and post-termination occupancy periods. We find these facts support Tenant's ratification of the Lease and thus, Tenant cannot simultaneously avoid the Lease's burdens while accepting the Lease's benefits. *See Mazzoni*, 761 So. 2d at 313; *see also Dist. Bd. of Trs. v. Morgan*, 890 So. 2d 1155, 1160 (Fla. 5th DCA 2005) (commenting that because a party ratified a contract that the other party procured through fraud, "[the ratifying party] cannot be heard to complain because the jury agreed and found that the contract was enforceable by both parties").

**B.** ***Because the Leased Premises was not "Untenantable" and Tenant did not Satisfy § 83.201's Requirements, Tenant Remained Obligated to Pay Rent During the Entire Period it Occupied the Property***

> When the lease is silent on the procedure to be followed to effect repair or maintenance and the payment of rent relating thereto, yet affirmatively and expressly places the obligation for same upon the landlord, and the landlord has failed or refused to do so, rendering the leased premises *wholly untenantable,* the tenant may withhold rent after notice to the landlord. The tenant shall serve the landlord, in the manner prescribed by s. 83.20(3), with a written notice *declaring the premises to be wholly untenantable, giving the landlord at least 20 days to make the specifically described repair or maintenance, and stating that the tenant will withhold the rent for the next rental period and thereafter until the repair or maintenance has been performed.*

§ 83.201, Fla. Stat. (2020) (emphasis added).

Here, the record evidence did not demonstrate that the absence of fencing "render[ed] the leased premises wholly untenantable." Tenant, even amidst security concerns, operated its used car lot business on the leased premises for nineteen months following the Lease renewal. Before renewal, Tenant had operated its business on the unfenced leased premises for several years. *See Cruise.com v. Eller Drive Props., Inc.*, 813 So. 2d 254, 255 (Fla. 4th DCA 2002) (commenting that the rental premises were not rendered wholly untenantable because the commercial tenant's employees continued to work on the premises, and thus, the tenant could not meet the statutory criteria to withhold rent); *Masser v. London Operating Co.*, 145 So. 79, 83 (Fla. 1932) ("The mere failure, however, of the landlord to make repairs, the need of which does not render the premises untenantable, will not warrant an abandonment of the premises *or relieve the tenant from liability for rent.*" (emphasis added)).

Additionally, despite the trial court's finding that Tenant "met the requisite [written notice] elements" under the rent withholding statute, we are unable to find any specific correspondence within this record whereby Tenant: (1) declared the leased premises to be "wholly untenantable"; (2) provided Landlord with at least twenty days from the untenantability declaration to install fencing; and (3) expressed Tenant's intent to withhold future rent until the fencing was installed. *See* § 83.201, Fla. Stat. (2020). Nor has Tenant directed us to any correspondence within the record that complies with section 83.201's or section 83.20(3)'s requirements.

Therefore, the trial court erred when it determined that Tenant was entitled to withhold rent because its factual findings are not supported by competent substantial evidence. *See Cruise.com*, 813 So. 2d at 255.

A general principle of law provides that "upon possession by a lessee of premises to which a covenant to improve or repair has not been fulfilled on the part of the lessor, the defect is generally waived and rent under the lease is due." *See Yanks v. Truly Nolen, Inc.*, 341 So. 2d 829, 831 (Fla. 3d DCA 1977); *City of Miami Beach v. Ellis*, 279 So. 2d 335, 338 (Fla. 3d DCA 1973) ("[T]he lessee continuing in possession following the breach of covenant to repair a portion of the p[re]mises was not relieved of his obligation to continue to pay the rent as stipulated in the lease."). This principle has held true even in situations when a trial court rescinded a lease agreement. *See Yanks*, 341 So. 2d at 831–32 (despite the tenant's payment of rent being conditioned upon the landlord's completion of improvements, the tenant was "not entitled to occupy the premises free of charge").

Here, after the renewed Lease commenced, Tenant enjoyed the benefits which the leased premises provided for nineteen months, including

6

operating Tenant's used car lot business, earning income, and suffering only "speculative" damages purportedly due to no fencing.[1] *See Morris Inv. P'ship v. Figueroa*, 698 So. 2d 288, 289–90 (Fla. 3d DCA 1997) (leased premises benefitted the tenant by providing space for the tenant to operate his automobile repair shop); *AVVA-BC, LLC v. Amiel*, 25 So. 3d 7, 11 (Fla. 3d DCA 2009) (leased premises benefitted the tenant by providing space for the tenant to conduct business without interference for seven months).

The trial court returning $87,862.50 in rental payments to Tenant and excusing Tenant's obligation to pay rent during the post-termination occupancy period deprived Landlord of *any* rent during the renewed Lease period. This was error and runs afoul of the referenced general principle that "rent under the lease is due" if a landlord breaches a repair obligation yet the tenant remains in possession of the leased premises. *See Yanks*, 341 So. 2d at 831; *Ellis*, 279 So. 2d at 338; *Masser*, 145 So. at 83.

Accordingly, we hold that Landlord is legally entitled to retain the rental payments that Tenant paid during the pre-termination occupancy period (January 2020 through November 30, 2020) and receive rent for the post-termination occupancy period (December 1, 2020 through July 9, 2021).

### C. On Remand, the Trial Court Must Address the Issues of Payment of Property Taxes, Cleanup Expenses, and the Return of All or Part of Tenant's Security Deposit

In addition to unpaid rent, Landlord presented evidence of property taxes and cleanup expenses which Landlord had incurred, neither of which the trial court appears to have considered because of the trial court's fraudulent and negligent inducement and breach findings. Tenant may be responsible for these expenses under the Lease. The trial court erred in categorically barring Landlord from recovering these expenses given that Tenant ratified the Lease. *See Mac-Gray*, 913 So. 2d at 634; *Morgan*, 890 So. 2d at 1160. In addressing Landlord's cleanup expenses claim, the trial court must determine what portion, if any, of Tenant's security deposit should be applied to cleanup expenses and what portion of the deposit should be returned to Tenant.

### Conclusion

The trial court improperly determined that Tenant was entitled to remain in the tenantable leased premises for nineteen months essentially rent-free, which is contrary to established law, and failed to consider

---

[1] Tenant did not cross-appeal or otherwise challenge the trial court's determination that Tenant presented only "speculative" evidence concerning its vehicle inventory damages.

Landlord's presented evidence of unreimbursed property taxes and cleanup expenses and return of Tenant's security deposit. We reverse and remand for the trial court to award Landlord rent for the period that Tenant occupied the leased premises (January 1, 2020 through July 9, 2021) and to reassess and calculate recovery of property taxes and cleanup expenses and return of Tenant's security deposit.

*Affirmed in part; reversed and remanded in part with instructions.*

KLINGENSMITH, C.J., and CIKLIN, J., concur.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***