962 So.2d 1006 (2007)
TURNBERRY COURT CORPORATION, a Florida corporation, as general partner of Porto Vita, Ltd., a Florida limited partnership, and Green Development Associates, Inc., as general partner of Porto Vita, Ltd., a Florida limited partnership, Appellants,
v.
Dr. Francesco BELLINI, Marissa Bellini, and Rocabe, Inc., a Canadian corporation, Appellees.
No. 3D06-2198.
District Court of Appeal of Florida, Third District.
August 8, 2007.
Katz, Barron, Squitero, Faust, Terzo, Friedberg, Grady, English & Allen and Robert C. Grady, Ft. Lauderdale, for appellants.
Derrevere, Hawkes & Black, Jupiter, Shirley Jean McEachern, Naples, and Jon D. Derrevere, Jupiter, for appellees.
Before GERSTEN, C.J., and SUAREZ, J. and FLETCHER, Senior Judge.
FLETCHER, Senior Judge.
Turnberry Court Corporation and Green Development Associates, Inc., as general partners of Porto Vita, Ltd., (hereinafter Porto Vita) appeal from a final judgment entered after a jury verdict in an action for *1007 breach of statutory implied warranties on a new condominium. We affirm the judgment entered below.
Porto Vita was the owner/developer of the South Tower of Porto Vita, a residential condominium complex in Aventura, Florida. On March 22, 2000, Dr. Francesco Bellini and his wife, Marissa contracted to purchase a luxury penthouse unit from Porto Vita. Both prior to and after the closing, the Bellinis complained of problems with the unit's air conditioning system. These problems included leakage, dust accumulation, abnormal noise, and uneven air flow temperatures. An inspection revealed that the problems were caused by several deficiencies in the installation of the system such as the use of concealed space as part of the duct system; locating the air handling unit in a closet; unprotected fibrous glass ductwork in the mechanical room; inadequate drain pans under the air conditioning unit and the hot water heater; no return ductwork; failure to seal the mechanical rooms and plenums; substandard air filtration module; failure to install balancing dampers; and insufficient ventilation rate.
The Bellinis and Rocabe, Inc. (plaintiffs)[1] filed the instant action against Porto Vita asserting three theories of liability: Count I  Breach of Statutory Implied Warranty of Fitness and Merchantability under Florida Statute Section 718.203; Count II  Breach of Contract; and Count III  Violation of the South Florida Building Code. The plaintiffs dismissed Count III and the case was tried on Counts I and II. The jury returned a verdict in the amount of $31,918 in favor of the plaintiffs on Count I and for the defendants on Count II. The plaintiffs initially appealed the judgment as to Count II, but later voluntarily dismissed their appeal. The defendants cross-appealed the judgment as to Count I; this is the appeal presently before us.
Porto Vita's principal argument on appeal is that the trial court erred in entering judgment in favor of the plaintiffs because the alleged defects are outside the scope of section 718.203, Florida Statute (2005), which sets forth the developer's statutorily implied warranties. In particular, it contends that the claim is barred by the language in subsection (1)(e) which excludes "mechanical elements serving only one unit." A short review of the history of Section 718.203 may assist us in the proper interpretation of the statute.
Florida courts traditionally applied the principle of caveat emptor or "buyer beware" to transactions involving real estate. See e.g., Camardella v. Courtright, 126 Fla. 536, 171 So. 225 (1936); Gonzalez v. Patane, 234 So.2d 8 (Fla. 3d DCA 1970). This doctrine places the duty to examine and judge the value and condition of the property solely on the buyer and protects the seller from liability for any defects. Haskell Co. v. Lane Co., Ltd., 612 So.2d 669 (Fla. 1st DCA 1993). In the landmark case of Gable v. Silver, 264 So.2d 418 (Fla.1972), the Florida Supreme Court abandoned the doctrine of caveat emptor in favor of implied warranties of fitness and merchantability on the purchase of new condominiums from builders. See also Johnson v. Davis, 480 So.2d 625 (Fla. 1985) (holding that sellers, whether of new or used homes, have a duty to disclose to the buyer facts materially affecting the value of the property which are not readily observable). The holding in Gable was first codified in 1974 as section 711.65, now section 718.203.
*1008 The warranties are part of the much larger statutory scheme adopted by Florida to regulate condominiums known as the Condominium Act, sections 718.101 through 718.622 of the Florida Statutes. As recognized in Rogers & Ford Construction Corp. v. Carlandia Corp., 626 So.2d 1350, 1352 (Fla.1993), the condominium is a hybrid estate in property law completely subject to the Legislature's control and regulation. A condominium owner obtains title to a unit, together with an undivided share in common elements, i.e., all portions of the condominium property not included in the units. § 718.103(8), (11), Fla. Stat. (2005). Although divided into seven subsections, only subsection (1) of section 718.203 directly applies to developers.
(1) The developer shall be deemed to have granted to the purchaser of each unit an implied warranty of fitness and merchantability for the purposes or uses intended as follows:
(a) As to each unit, a warranty for 3 years commencing with the completion of the building containing the unit.
(b) As to the personal property that is transferred with, or appurtenant to, each unit, a warranty which is for the same period as that provided by the manufacturer of the personal property, commencing with the date of closing of the purchase or the date of possession of the unit, whichever is earlier.
(c) As to all other improvements for the use of unit owners, a 3-year warranty commencing with the date of completion of the improvements.
(d) As to all other personal property for the use of unit owners, a warranty which shall be the same as that provided by the manufacturer of the personal property.
(e) As to the roof and structural components of a building or other improvements and as to mechanical, electrical, and plumbing elements serving improvements or a building, except mechanical elements serving only one unit, a warranty for a period beginning with the completion of construction of each building or improvement and continuing for 3 years thereafter or 1 year after owners other than the developer obtain control of the association, whichever occurs last, but in no event more than 5 years.
(f) As to all other property which is conveyed with a unit, a warranty to the initial purchaser of each unit for a period of 1 year from the date of closing of the purchase or the date of possession, whichever occurs first.
§ 718.203, Fla. Stat. (2005).
The statute classifies the type of property involved, assigning to each a different warranty period. The classifications are: (a) the unit; (b) the personal property transferred with each unit; (c) all other improvements for the use of unit owners; (d) all other personal property for the use of the unit owners; (e) the roof and structural components, and mechanical, electrical and plumbing elements serving a building (rather than a single unit); and (f) all other property conveyed with a unit. Clearly, subsections (a), (b) and (f) are primarily concerned with the residential unit itself while (c), (d) and (e) pertain to the common elements of the condominium complex. This arrangement comports with the aforementioned twofold nature of condominium ownership.[2]
Porto Vita would have us superimpose another arrangement, a general versus a specific or special division so as to benefit from the rule of statutory construction *1009 that a special statute controls over a general statute. They argue that subsection (e), because it specifically mentions mechanical elements, should control over the remaining general provisions. Such a reading, however, contravenes another well-accepted precept of statutory construction which requires reconciliation among seemingly disparate provisions of a statute so as to give effect to all its parts. Woodgate Dev. Corp. v. Hamilton Inv. Trust, 351 So.2d 14, 16 (Fla.1977). The clear objective of the statute is to cover the complete unit and all common elements. The developer's warranties extend to personal property transferred with the unit, which can include such items as a refrigerator, stove or ceiling fan. Therefore, it is absurd to conclude that the legislature purposely intended to exclude from the warranties such an integral part of a luxury penthouse condominium as is a central air conditioning system. Consequently, when examined in light of both the nature of the ownership rights of a condominium and the original and overall purpose of providing home buyers with a warranty that the new condominium they are buying meets reasonable expectations, section 718.203(1) must be read to include the claim presented by the plaintiffs here.
As indicated above, this action was brought by both the Bellinis and Rocabe. We agree with appellants, that Rocabe, Inc., as the holder of legal title to the condominium, is the unit owner entitled to damages. § 718.103(28), Fla. Stat. (2005) (defining owner of a unit as the "record owner of legal title to a condominium parcel"). Therefore, we affirm the judgment entered in favor of Rocabe, Inc., but reverse the judgment in favor of the Bellinis.
Affirmed in part; reversed in part.
NOTES
[1] The Bellinis assigned their rights under the purchase agreement to Roca Inc., a Canadian corporation, which at the closing, received title to the condominium. One year after closing, a corrective warranty deed was recorded substituting Rocabe, Inc., for Roca, Inc. The Bellinis are the majority owners of Rocabe, Inc.
[2] With the added wrinkle of the statutorily mandated transfer of control of the condominium association. See § 718.301, Fla. Stat. (2005).