913 So.2d 630 (2005)
MAC-GRAY SERVICES, INC., Appellant,
v.
Leonard DeGEORGE, Thomas De-George, and L & T Coin Laundromat, Inc., Appellees.
No. 4D03-4897.
District Court of Appeal of Florida, Fourth District.
July 6, 2005.
*631 Bruce S. Rogow, Beverly A. Pohl and Cheryl Zickler of Bruce S. Rogow, P.A., Fort Lauderdale, for appellant.
Roy D. Wasson and Annabel C. Majewski of Wasson & Associates, Miami, and Lee H. Schillinger of Lee H. Schillinger, P.A., Hollywood, for appellees.
WARNER, J.
Mac-Gray Services, Inc. appeals a final judgment in favor of the appellees, Leonard and Thomas DeGeorge and their corporation, L & T Coin Laundromat, Inc., based upon fraudulent inducement and breach of fiduciary duty. We reverse, because the trial court should have granted a *632 directed verdict in favor of Mac-Gray, as no fiduciary duty is present in this transaction, and the contract between the parties precluded relief on either claim.
Leonard DeGeorge wanted to run a laundromat. He began investigating ownership of one in 1996 and contacted Robert Elkins, a sales representative for a company that sold laundry equipment. Elkins told Leonard that it would cost around $70,000 to open a laundromat business.
Several years later, Leonard received compensation from an accident and again contacted Elkins regarding setting up a laundromat. He told Elkins, who was now employed by Mac-Gray, that he had $70,000 to invest. Leonard's brother, Thomas, was going to participate in the business. Elkins told the brothers that they were "pretty much guaranteed" to make money as soon as the business opened. He also recommended a contractor to them who they could hire to set up the facility.
The next day, Leonard met with Elkins and told him that he was coming to Elkins because of his expertise. In response, Elkins told Leonard that he had "never been involved in a failed coin laundromat." He also said he would be Leonard's expert.
Elkins found a location for the laundromat and showed it to Leonard. He also provided him with an estimated profit and loss schedule, which showed that Leonard would earn an estimated profit for the first year of $83,696 if each washer was used an average of two hours per day. At that point, Elkins told Leonard that he needed a deposit before he could go any further, because he wanted to make sure that Leonard did not go to a competitor. In return, Elkins said he would secure the location, help obtain financing, and configure the equipment for the laundry. The following day, the DeGeorges paid a deposit to Mac-Gray.
Afterwards, Elkins did help secure the financing. Once financing was approved, Leonard and Thomas signed a contract for the laundry equipment, which was also signed by Elkins on behalf of Mac-Gray. The contract contains two provisions material to this dispute. Specifically, paragraph seven provides, "Purchaser acknowledges that Seller, specifically neither guarantees any income nor profits from the use of the equipment, nor agrees to repurchase the equipment for any reason whatsoever. Seller represents that there is no charge for any marketing, training program, or trademark license granted in connection with this sale." Additionally, paragraph sixteen states, "Purchaser represents to Seller that Purchaser is not relying on Seller's expertise nor on any representations or guarantees of any kind in order to utilize the goods and/or services sold hereunder to begin or continue any business activity." (Emphasis supplied).
Thereafter, Thomas met with Molinsky, the contractor recommended by Elkins, but brought along a contractor friend to question Molinsky regarding his qualifications. Additionally, Elkins helped negotiate a lease for the location and recommended that the brothers take it to an attorney for review. Instead of following this advice, the brothers had the lease reviewed by a real estate agent who specialized in strip malls. After that review, they signed the lease. Elkins also provided a layout for the machines in the store.
Leonard and Thomas went to their accountant, who incorporated L & T Coin Laundromat, Inc. She advised them on how to organize their business records. She also asked them if they had enough money to weather the start-up period, and they told her that they had an additional *633 $30,000 to carry them for an anticipated start-up period of six months.
The permitting and construction process for the location took much longer than expected. Leonard called Elkins who told him he was no longer involved in the transaction. Nevertheless, Elkins did involve himself in obtaining additional financing for the business when costs increased.
After many delays, the laundromat ultimately opened. However, after the grand opening week, the business did not make a profit, and the DeGeorges decided to sell the business three-and-a-half weeks after opening. They then sued Mac-Gray for fraud in the inducement of the contract, breach of fiduciary duty, and violation of section 501.201, Florida Statutes, Florida Deceptive and Unfair Trade Practices Act. The trial court granted a directed verdict on the statutory claim, but denied it as to the other two counts. The jury rendered a verdict in favor of the DeGeorges and their corporation, and Mac-Gray appeals the resulting final judgment.
Mac-Gray challenges the denial of the motion for directed verdict, asserting that there is no fiduciary duty present in this commercial transaction and the contract specifically negates the DeGeorges' ability to rely on the representations made by Elkins. We agree.
"A fiduciary relationship is based on trust and confidence between the parties where `confidence is reposed by one party and a trust accepted by the other,. . . .'" Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So.2d 536, 540 (Fla. 5th DCA 2003) (quoting Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 421 (1927)). However, "[w]hen the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." Id. at 541.
Here, the transaction between the parties was an ordinary commercial transactionthe purchase of equipment to commence a laundromat. Therefore, even without the specific contractual disclaimer, we would find no fiduciary duty arose. However, the contract itself negates the existence of a fiduciary duty as the purchaser acknowledges that he is not relying on any expertise of the seller in entering into the contract to purchase the equipment or to continue the business opportunity.
Additionally, another provision of the contract provides:
In the event suggestions are given by the Seller or its agents to the Purchaser with respect to matters having to do with such things as securing of location, lease, permits, and licenses, contracting and installation of equipment, such suggestions will in every case be given as advice to and for the guidance only of the Purchaser who retains sole responsibility for all decisions or action required for putting into operation equipment purchased from Seller and neither the Seller nor its agents are in any way assuming liability or responsibility in making such a suggestion.
This provision negates the DeGeorges' ability to rely on any of Elkins's statements relative to the creation of the business. Both clauses also refute the DeGeorges' claim that the contractual disclaimers related only to the purchase of equipment, while the fiduciary relationship revolved around the other aspects of setting up the business. The contract provided with complete clarity that the DeGeorges could not rely on any statements of the seller on any of these matters. No fiduciary duty existed, and the court erred in failing to grant a directed verdict on this count.
*634 The contract likewise negates the fraudulent inducement claim. The DeGeorges point to two statements as being material misrepresentations. First, they allege that Elkins failed to tell them that they could lose money during a start-up period, and the estimated profit and loss schedule that he provided did not address this possibility. Second, they assert that Elkins's statement that he had no failed laundromats was a misrepresentation because he had been involved with failed owners. At their heart, these statements concern the profitability of the business and the expertise of the seller, matters both expressly addressed in the contract.
Even if we considered these material statements, rather than mere puffing, the contract precludes reliance on them. A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract. See Giallo v. New Piper Aircraft, Inc., 855 So.2d 1273, 1275 (Fla. 4th DCA 2003); Peebles v. Sheridan Healthcare, Inc., 853 So.2d 559, 562 (Fla. 4th DCA 2003). In this contract, the purchasers specifically agreed that the seller was not guaranteeing any level of profitability or income from the machines, and the purchasers also agreed that they were not relying on the seller's expertise or any representations made by the seller in connection with the purchase or the business activity.
The DeGeorges counter that notwithstanding the disclaimers in the contract, when a contract is entered into through fraudulent inducement, the entire contract is unenforceable, relying on D & M Jupiter, Inc. v. Friedopfer, 853 So.2d 485, 489 (Fla. 4th DCA 2003). However, in this case the DeGeorges are not disaffirming the contract by suing for rescission; they are instead suing for damages, which affirms the contract and its terms. See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co., 761 So.2d 306, 313 (Fla.2000) (holding that fraudulent inducement claim for damages affirms contract and thus ratifies its provisions). Thus, they are bound by its terms.
In addition, the "as is" clause in the contract for sale of property in D & M Jupiter did not expressly cover the seller's representations on which the buyer sued for fraudulent inducement. Here, however, the alleged fraudulent misstatements on profitability and reliance on the seller's expertise were specifically addressed in the contract. The trial court erred in failing to grant a directed verdict on the fraudulent inducement count, because the contract excludes reliance on any statements regarding profitability or expertise of the seller.
The DeGeorges also cross-appealed the trial court's entry of a directed verdict on the FDUTPA claim. They assert that Mac-Gray's conduct was actionable under FDUTPA. However, a party's "reliance upon oral statements which [are] at variance with the written documents [is] not reasonable as a matter of law." See Rosa v. Amoco Oil Co., 262 F.Supp.2d 1364, 1368-69 (S.D.Fla.2003). They also claim that Mac-Gray committed a FDUTPA violation because it failed to comply with federal franchising regulations. However, they failed to establish that a continuing relationship existed between Mac-Gray and them to constitute a franchise agreement.
Reversed for entry of a final judgment in favor of Mac-Gray services.
KLEIN and TAYLOR, JJ., concur.