DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP MORRIS USA INC.,**
Appellant,

v.

**MICHAEL GENTILE,** as Personal Representative of the **ESTATE OF BRENDA GENTILE**,
Appellee.

No. 4D18-1439

[September 18, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Meenu Sasser, Judge; L.T. Case No. 502015CA005405XXXXMB.

Geoffrey J. Michael of Arnold & Porter Kaye Scholer LLP, Washington, DC, and Scott A. Chesin of Mayer Brown LLP, New York, New York, for appellant.

Courtney Brewer and John S. Mills of The Mills Firm, P.A., Tallahassee, and Robert W. Kelley and Eric S. Rosen of Kelley Uustal, PLC, Fort Lauderdale, for appellee.

DAMOORGIAN, J.

In this non-*Engle*[1] wrongful death action, Philip Morris USA Inc. ("PM") appeals the final judgment entered in favor of Michael Gentile as Representative of the estate of his deceased wife, Brenda Gentile ("Plaintiff"). PM maintains the court erred on two grounds. First, PM argues that the court improperly denied its motion for directed verdict on its three fraud-based claims because Plaintiff failed to prove PM made a false or misleading statement about its light or low-tar cigarettes after May 12, 2003, as required by Florida's statute of repose.[2] Second, PM asserts

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).
[2] Florida's statute of repose provides that a fraud claim must be filed "within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered." § 95.031(2)(a), Fla. Stat. (2015).

that certain comments made by Plaintiff's counsel during closing arguments necessitate a new trial. As to the comments made during closing, we affirm without comment. With respect to the fraud-based claims, we find that PM is entitled to a directed verdict and, for the reasons set forth below, reverse and remand for a new trial on the remaining strict liability and negligence claims.

## Background

Plaintiff filed a wrongful death action against PM asserting Mrs. Gentile died from lung cancer caused by her addiction to cigarettes designed, manufactured, advertised, marketed, distributed and/or sold by PM. In his suit, Plaintiff alleged causes of action for strict liability, negligence, fraud by concealment, fraud by misrepresentation, and conspiracy to commit fraud by concealment. At trial, it was established that Mrs. Gentile smoked at least a pack of cigarettes a day for over 30 years. She smoked several brands throughout the years, but her main brand was PM's Virginia Slims, both lights and ultra-lights. Mrs. Gentile was diagnosed with Stage IV lung cancer in 2014. She passed away less than six months later.

At trial, Plaintiff presented testimony from various experts concerning the American tobacco industry, generally, and the actions the tobacco companies took to market their products to consumers while concealing their harm. For example, in the 1970s, the tobacco companies began marketing "light" and "ultra-light" cigarettes as having fewer health risks because they contained less tar and nicotine despite knowing the opposite to be true. In 1999, PM admitted as much when it created a public website informing the public that cigarettes were highly addictive and caused diseases and that "[s]mokers should not assume Light or Ultra Light brands are safe or are safer than full flavor brands." The website also provided links to various health authorities concerning light and low-tar cigarettes.

In 2000, PM issued its official position regarding "smoking and health issues" on its public website, stating:

> Philip Morris USA agrees with the overwhelming medical and scientific consensus that cigarette smoking causes lung cancer, heart disease, emphysema and other serious diseases in smokers. Smokers are far more likely to develop such

As Plaintiff filed his action on May 12, 2015, he had to prove PM made a false or misleading statement about its light or low-tar cigarettes after May 12, 2003.

2

serious diseases than non-smokers.

> There is no safe cigarette.  Cigarettes are addictive and cause serious disease in smokers.  For those concerned about the health risks of smoking, the best thing to do is to quit.

Then, in November 2002, PM provided newspaper inserts, a 20-page booklet detailing the health risks of light cigarettes, in several major newspapers stating that "[l]ow-tar cigarettes evidence does not indicate a benefit to public health."  Also, in November 2002, PM added onserts, a folded leaflet placed under the cellophane packaging, to its light and ultra-light cigarettes.  Between 2002 and 2008, every pack of Virginia Slims light cigarettes contained the onsert which included the following "Information for Smokers":

> There is no such thing as a safe cigarette.  The terms "Ultra Light", "Light", "Medium" and "Mild" are used as descriptors of the strength of taste and flavor.  These terms, as well as "low tar" or "lowered tar and nicotine" also serve as a relative indication of the average tar and nicotine yield per cigarette, as measured by standard government test method.

> The tar and nicotine yield numbers are not meant to communicate the amount of tar or nicotine actually inhaled by any smoker, as individuals do not smoke like the machine used in the government test method.  The amount of tar and nicotine you inhale will be higher than the stated tar and nicotine yield numbers if, for example, you block ventilation holes, inhale more deeply, take more puffs or smoke more cigarettes.  Similarly, if you smoke brands with descriptors such as "Ultra Light", "Light", "Medium" or "Mild," you may not inhale less tar and nicotine than you would from other brands.  It depends on how you smoke.

> You should not assume that cigarette brands using descriptors like "Ultra Light", "Light", "Medium" or "Mild" are less harmful than "full flavor" cigarette brands or that smoking such cigarette bands will help you quit smoking.  If you are concerned about the health effects of smoking, you should quit.  For more information about the numbers, brand descriptors or quitting smoking, please go to www.pmusa.com or call 1-800-343-0975.

In order to establish that PM made a false or misleading statement about its light or low-tar cigarettes within the repose period notwithstanding the above disclosures, Plaintiff presented testimony of two PM corporate representatives, Dr. Lipowicz and Jennifer Pike. Through his prerecorded deposition testimony taken in 2017, Dr. Lipowicz explained that light and ultra-light cigarettes have a longer filter, making the smoke more diluted, which meant less tar and less nicotine. He stated that light cigarettes are safer than regular full-flavored cigarettes because "when you lower tar of a cigarette, you reduce exposure of the smokers to tar and other components, and it . . . makes some reduction in the chance of getting cancer or other diseases."

Jennifer Pike testified that PM continued marketing and advertising with the terms light and ultra-light until 2010. She further testified that the terms light and ultra-light "would generally indicate strength of taste and flavor, and it is also related to a relative level of tar that you could compare from one style to the other, as measured by the [Federal Trade Commission] method."

At the close of Plaintiff's case, PM moved for a directed verdict on all counts. Relevant to the fraud claims, PM argued that Plaintiff did not provide evidence PM made a false or misleading statement about its light or low-tar cigarettes during the repose period. The court denied the motions, finding that the statute of repose presented a "jury issue" in light of the "advertising" evidence. The court did not specify which "advertising" evidence created a triable issue for the jury. The jury ultimately returned a verdict in favor of Plaintiff on all claims and awarded a total of $7.1 million in compensatory damages. The verdict form did not specify the amounts attributed to each cause of action. This appeal follows.

**Analysis**

"The standard of review on appeal of the trial court's ruling on a motion for directed verdict is de novo." *Contreras v. U.S. Sec. Ins. Co.*, 927 So. 2d 16, 20 (Fla. 4th DCA 2006). A directed verdict "must be granted where the evidence is of such a nature that under no view which the jury might lawfully take of it, favorable to the adverse party, could a verdict for the latter be upheld." *Broward Exec. Builders, Inc. v. Zota*, 192 So. 3d 534, 536 (Fla. 4th DCA 2016) (citation and internal quotation marks omitted).

PM argues that the court improperly denied its motion for directed verdict on its fraud-based claims because Plaintiff failed to prove PM made a fraudulent statement or omission about the safety of its light or low-tar cigarettes after May 12, 2003. PM maintains that it expressly disclaimed

4

any misrepresentation that light or low-tar cigarettes were safer or less addictive than its full-flavored cigarettes prior to the repose period. We agree.

In general, a party cannot recover in fraud for alleged misrepresentations that have been expressly disclaimed or contradicted in a later disclosure. *See Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005). The holding in *Gurevitch v. Philip Morris USA Inc.*, 2009 WL 3848422 (Cal. Super. Ct. Nov. 9, 2009) is instructive. In *Gurevitch*, plaintiffs brought a putative class action claiming that PM misrepresented that its "self-extinguishing" cigarettes were less likely to start fires. *Id.* at *1-2. The court ultimately dismissed the action, reasoning that PM's "advertisements expressly disclaim[ed] the very assertions posited by the plaintiff as misleading." *Id.* at *3. Specifically, the advertisements stated the following: "these cigarettes are not fire safe;" "[d]o not handle or dispose of cigarettes made with this special paper with any less care than other cigarettes;" and "[a]nything that burns, including cigarettes or cigarette ashes, can cause a fire if handled carelessly." *Id.*

Because these "uncontroverted disclaimers" put smokers on notice that the cigarettes could cause injury from ash drop off or any other event resulting from a burning cigarette, the advertisements were not misleading as a matter of law. *Id.*; *see also In re AIG Advisor Grp. Sec. Litig.*, 309 F. App'x 495, 498 (2d Cir. 2009) (affirming dismissal of fraud claim where defendant's website detailed the allegedly undisclosed facts); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F. 3d 651, 676 (6th Cir. 2005) ("It makes logical sense that a claim based on the alleged withholding from the public of information that contradicts information publicly stated is defeated by a demonstration that the allegedly withheld information was in fact disclosed to the public . . . ."); *Ray v. Spirit Airlines, Inc.*, 2015 WL 11143079, at *6 (S.D. Fla. June 4, 2015) ("While it is true that the nondisclosure of material information, even in the absence of any patently false statements, can also constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose, [the airline's] website did disclose the material information Plaintiffs argue is missing." (citations and internal quotation marks omitted)); *Trujillo v. Apple Comput., Inc.*, 581 F. Supp. 2d 935, 937–39 (N.D. Ill. 2008) (granting summary judgment in defendant's favor on concealment claim because the "exterior of the box in which the customer receives [the product] discloses what [plaintiff] . . . alleged was hidden").

Here, similar to *Gurevitch*, PM's pre-May 12, 2003 disclosures adequately explained "there is no such thing as a safe cigarette" and put consumers on notice that light and ultra-light cigarettes are of no benefit

to public health. Moreover, the onserts explicitly stated that the descriptors light and ultra-light referred to strength of taste and that light and ultra-light cigarettes were not less harmful than regular cigarettes. The onserts also explained that the terms "low tar" or "lowered tar and nicotine" referred to the tar and nicotine yield as measured by a government test method, and "the amount of tar and nicotine you inhale will be higher" if "you block ventilation holes, inhale more deeply, take more puffs or smoke more cigarettes." Accordingly, any alleged misrepresentations that PM made in the past regarding light and ultra-light cigarettes were expressly disclaimed prior to the repose period, thus foreclosing Plaintiff from recovering in fraud.

Plaintiff nonetheless argues that the following constituted evidence of misrepresentation and concealment sufficient to create a jury issue on the fraud claims: (1) PM's continued use of the descriptors light and ultra-light during the repose period; and (2) the testimony of PM's corporate representatives. We disagree.

First, because the pre-May 12, 2003 disclosures adequately disclaimed any prior misrepresentations regarding light and ultra-light cigarettes, the continued use of the descriptors light and ultra-light during the repose period could not constitute a misrepresentation. Second, the testimony of PM's corporate representatives did not constitute evidence of fraud. Although Dr. Lipowicz testified that light cigarettes were safer, his deposition testimony was taken in August 2017, well after the repose period ended. Also, Jennifer Pike's testimony regarding light and ultra-light cigarettes containing less tar was in reference specifically to the measuring method employed by the Federal Trade Commission via a smoking machine. This exact explanation was also included in the cigarette packaging onserts issued in 2002.

## **Conclusion**

For the foregoing reasons, we reverse and remand with instructions that the trial court enter a directed verdict in favor of PM on Plaintiff's fraud-based claims. Moreover, because the jury awarded compensatory damages without specifying the amounts attributable to the non-fraud claims, we remand for a new trial on the remaining negligence and strict liability claims. *See Flagship Nat'l Bank v. Gray Distribution Sys., Inc.*, 485 So. 2d 1336, 1341 (Fla. 3d DCA 1986).

*Reversed in part and remanded for a new trial on the limited issues specified in this opinion.*

6

LEVINE, C.J., and KUNTZ, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***