DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FLORIDA HOLDING 4800, LLC,** a Florida Limited Liability Company,
Appellant,

v.

**LAUDERHILL MALL INVESTMENT, LLC,** a Florida Limited Liability
Company, et al.,
Appellee.

No. 4D20-174

[April 7, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Raag Singhal, Judge; L.T. Case No. CACE 16-12986 (21).

Robert J. Hauser of Pankauski Hauser Lazarus PLLC, West Palm Beach, for appellant.

Glenn L. Widom of Glenn L. Widom, P.A., North Miami, for appellee.

DAMOORGIAN, J.

Florida Holding 4800, LLC ("Buyer"), the purchaser of a commercial building ("the property"), sued Lauderhill Mall Investment, LLC ("Seller") alleging various causes of action relating to Seller's alleged misrepresentation and/or active concealment of the property's physical condition. The trial court entered final summary judgment in Seller's favor, concluding that Buyer's claims were adequately covered or expressly contradicted by the purchase and sale agreement ("PSA") and thus not actionable. We agree with the trial court and affirm.

As part of the real estate transaction, the parties executed a PSA which contained the following relevant "as is" clause:

> 11. "AS IS" SALE. Subject only to the warranties and representations made herein, if any, the [p]roperty shall be conveyed in "AS IS" condition with all faults. Seller makes absolutely no warranties, representations or covenants to Buyer whatsoever regarding the [p]roperty or the condition or quality thereof, or the fitness thereof for the purposes

intended by Buyer or for any other purpose or purposes whatsoever; (ii) Buyer acknowledges that Seller has not investigated and does not warrant or represent to Buyer that the [p]roperty is fit for the purpose intended by Buyer or for any other purpose or purposes whatsoever; (iii) *Buyer represents that it is purchasing the [p]roperty in its "As Is" condition and based solely on Buyer's own inspection, investigation and evaluation*; (v) [sic] *neither Seller nor any agent of Seller has made any representation or warranty, express or implied, oral or written, concerning the [p]roperty or which have induced Buyer to execute this Contract*; and (vi) any other representations and warranties are expressly disclaimed by Seller.

. . . .

[BUYER] HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS, OR INFORMATION PERTAINING TO THE PROPERTY OR RELATING THERETO . . . MADE OR FURNISHED BY SELLER . . . . [BUYER], UPON CLOSING, SHALL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED SELLER . . . FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, WHICH [BUYER] MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER . . . AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL OR ENVIRONMENTAL CONDITIONS . . . AND ANY AND ALL OTHER ACTS, OMISSIONS, EVENTS, CIRCUMSTANCES OR MATTERS REGARDING THE PROPERTY.

(emphasis added). In addition, the PSA permitted Buyer to inspect the property and, if Buyer was unsatisfied with the condition of the property following the inspection, to cancel the contract. Buyer took advantage of this provision and hired an engineer to inspect the property.[1]

---

[1] Notably, Buyer brought a separate suit against the engineer it hired to conduct the inspection.

After the sale, Buyer discovered issues with the property's physical condition, including roof leaks, HVAC failures, and mold growth. Buyer then sued Seller for damages, alleging causes of action for: (1) breach of implied covenant of good faith and fair dealing; (2) fraud in the inducement; (3) negligent misrepresentation; (4) negligence; and (5) unjust enrichment.[2] All the counts were premised on Buyer's allegation that Seller misrepresented and/or actively concealed the property's physical condition. Specifically, Buyer alleged Seller represented that the roof was well maintained and had no history of leaks and that the HVAC system never had any issues and was fully serviceable.

Seller moved for summary judgment, arguing that not only did the PSA expressly state Seller made no representations concerning the property's physical condition, but Buyer conducted its own inspection of the property. Buyer filed a response to the motion for summary judgment and attached thereto its manager's affidavit. In the affidavit, the manager attested that Seller "under[took] efforts to actively conceal an old, decaying, damaged, and actively leaking roof by covering the damaged areas of the roof to hide the leaking condition." Aside from relying on the language in the PSA, Seller presented no evidence to counter the assertions in the manager's affidavit.

The trial court ultimately entered final summary judgment in Seller's favor, concluding that Buyer's claims were adequately covered or expressly contradicted by the PSA and thus not actionable. The trial court also pointed out that per the PSA's express terms, Buyer was to conduct its own inspection of the property and there was no evidence that Seller prevented those inspections. The trial court then cited to *Transcapital Bank v. Shadowbrook at Vero, LLC*, 226 So. 3d 856 (Fla. 4th DCA 2017), for the proposition that "Florida law continues to follow the doctrine of *caveat emptor* with regard to commercial real estate transactions." This appeal follows.

We first address the trial court's determination that Buyer's claims, including the fraud claim, were adequately covered or expressly contradicted by the PSA. It is well established that "[a] party cannot

---

[2] Buyer's complaint also originally included a rescission count. During the pendency of the action, however, the property was assigned to a third party and foreclosed on. Buyer later essentially conceded that its rescission count was no longer viable in light of the foreclosure. *See Smith v. Chopman*, 135 So. 2d 438, 440 (Fla. 2d DCA 1961) ("A party seeking to rescind an agreement must offer to place the other party in *statu[s] quo*, and if such restoration is impossible the contract cannot be rescinded.").

recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005). Our holding in *Mac-Gray* is instructive. In that case, the buyers entered into a contract with the seller for the purchase of laundry equipment. *Id.* at 632. Prior to entering into the contract, the seller's agent allegedly told the buyers "that they were 'pretty much guaranteed' to make money as soon as the business opened." *Id.* The contract contained provisions that the seller did not guarantee any income or profits and that the buyers were not relying on the seller's expertise or representations. *Id.* After a delayed opening, the buyers quickly sold what had become an unprofitable business and sued the seller for fraud in the inducement of the contract. *Id.* at 633. The buyers based their claim on the fact that the seller's agent did not tell them they could lose money in the startup period and did not tell them that the seller had been involved in failed laundromats. *Id.* at 634. This Court held that the trial court erred in not granting the seller's motion for a directed verdict because the contract "negate[d] the fraudulent inducement claim" and did not guarantee profitability. *Id.* In so holding, we recognized the general rule that "when a contract is entered into through fraudulent inducement, the entire contract is unenforceable," but pointed out that the buyers in that case were suing for damages and were not seeking rescission of the contract. *Id.* (distinguishing the holding in *D & M Jupiter, Inc. v. Friedopfer*, 853 So. 2d 485 (Fla. 4th DCA 2003)).

Here, consistent with the holding in *Mac-Gray*, even if Seller made oral representations to Buyer regarding the property's physical condition, the PSA contradicted those representations. Specifically, the PSA's "as is" clause expressly states that: (1) "Seller makes absolutely no warranties, representations or covenants to Buyer whatsoever regarding the [p]roperty or the condition or quality thereof;" (2) "Buyer represents that it is purchasing the [p]roperty in its 'As Is' condition and based solely on Buyer's own inspection, investigation and evaluation;" (3) "neither Seller nor any agent of Seller has made any representation or warranty, express or implied, oral or written, concerning the [p]roperty or which have induced Buyer to execute this Contract;" and (4) upon closing, Buyer "shall be deemed to have waived, relinquished and released Seller . . . from and against any and all claims." These provisions clearly negate Buyer's claims for damages, including the fraud claim. *See Mac-Gray*, 913 So. 2d at 634; *Giallo v. New Piper Aircraft, Inc.*, 855 So. 2d 1273, 1275 (Fla. 4th DCA 2003) ("Assuming for purposes of argument that the oral statement is fraudulent, a party cannot recover for fraudulent oral representations which are covered in or contradicted by a later written agreement."); *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1058 (Fla. 4th DCA 1999) (dismissal of fraud count affirmed where the agreement's express

language demonstrated that the buyer did not reasonably rely on any misrepresentation and granted buyer the right to inspect such that there was no actionable fraud). *But cf. Mantilla v. Fabian*, 284 So. 3d 575, 575 (Fla. 4th DCA 2019) (per curiam) ("[O]ur supreme court has spoken clearly that no contract provision can preclude rescission on the basis of fraud in the inducement unless the contract provision explicitly states that fraud is not a ground for rescission." (alteration in original) (quoting *Lower Fees, Inc. v. Bankrate, Inc.*, 74 So. 3d 517, 520 (Fla. 4th DCA 2011))).

We next address the trial court's determination that Buyer's claims were precluded under the doctrine of caveat emptor. The doctrine of caveat emptor, which Florida courts continue to apply, "places the duty to examine and judge the value and condition of the property solely on the buyer and protects the seller from liability for any defects." *Transcapital Bank*, 226 So. 3d at 862 (quoting *Turnberry Ct. Corp. v. Bellini*, 962 So. 2d 1006, 1007 (Fla. 3d DCA 2007)). There are, however, three exceptions to this doctrine, including: "1) where some artifice or trick has been employed to prevent the purchaser from making independent inquiry; 2) where the other party does not have equal opportunity to become apprised of the fact; and, 3) where a party undertakes to disclose facts and fails to disclose the whole truth." *Id.* (quoting *Green Acres, Inc. v. First Union Nat'l Bank of Fla.*, 637 So. 2d 363, 364 (Fla. 4th DCA 1994)).

This Court's holding in *Transcapital* is instructive. In that case, the buyer of a condominium was told that the property was worth $14.8 million and was shown two prior notes to that effect. *Id.* at 859–60. At trial on the buyer's fraud claim, however, evidence was put forth that the buyer never asked for the actual appraisal and since it only purchased some of the units, some of which were in horrible condition, the appraisal value was less than the orally represented amount. *Id.* at 860. At the close of the buyer's case, the seller argued that the property value was an opinion which could not form the basis of a fraud claim and moved for a directed verdict. *Id.* at 861. The jury found for the buyer and, at a post-trial hearing, the trial court denied the motion. *Id.* at 861–62. Applying the doctrine of caveat emptor, this Court held that the "fraud claim could not survive a motion for directed verdict" because "[n]one of the exceptions to caveat emptor appl[ied]." *Id.* at 862. Specifically, the buyer was able to inspect the property prior to closing, could have obtained its own appraisal, and purchased the property without physically viewing the appraisal. *Id.* Additionally, we pointed out that the buyer presented no evidence showing that the seller resorted to some fraudulent means in preventing the buyer from making an examination of the property. *Id.* at 863.

5

Here, like *Transcapital*, none of the exceptions to caveat emptor apply. *See id.* at 862–63. Although Buyer put forth its manager's affidavit attesting that Seller undertook efforts to actively conceal the roof's condition, Buyer did not allege that Seller's actions prevented it from conducting a thorough inspection of the property or that, but for Seller's conduct, Buyer would have discovered that the roof was defective. *See Agrobin, Inc. v. Botanica Dev. Assocs., Inc.*, 861 So. 2d 445, 446 (Fla. 3d DCA 2003) (per curiam) (holding, in the context of the doctrine of caveat emptor, that "a sophisticated purchaser of commercial property who agreed to an 'as is' purchase contract, had ample opportunity to conduct inspections, and could have discovered an alleged defect through the exercise of ordinary diligence, may be disgruntled, but does not have a cause of action for fraud" (quoting *Wasser v. Sasoni*, 652 So. 2d 411, 413 (Fla. 3d DCA 1995))). Unable to establish an exception to caveat emptor, Buyer is left with the PSA's express language providing that Buyer was purchasing the property "based solely on Buyer's own inspection, investigation and evaluation," and that Seller made no representations regarding the property's condition, or if it did, Buyer agreed it was not relying upon such representations. By these very terms, Buyer waived any claim of fraud on the undisputed material facts in this case. *See id.*

*Affirmed.*

WARNER and FORST, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***