# Third District Court of Appeal

## State of Florida

Opinion filed September 22, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-875
Lower Tribunal No. 17-25772
_____


**Philip Morris USA Inc.,**
Appellant,

vs.

**Edward F. Principe,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Valerie R. Manno Schurr, Judge.

Arnold & Porter Kaye Scholer LLP, and Geoffrey J. Michael (Washington, D.C.); Mayer Brown LLP, and Michael Rayfield (New York, NY); Shook, Hardy & Bacon, L.L.P., and Scott A. Chesin (New York, NY), for appellant.

Ratzan Weissman & Boldt, and Kimberly L. Boldt and Ryan C. Tyler (Boca Raton); The Alvarez Law Firm, and Alex Alvarez, Michael Alvarez, Nick Reyes and Phillip Holden, for appellee.


Before EMAS, LOGUE and SCALES, JJ.

SCALES, J.

In this non-Engle case,[1] Philip Morris USA, Inc. ("PM") appeals from a final judgment entered against it after a jury determined PM had fraudulently misrepresented to, and concealed from, Edward Principe the dangers associated with smoking filtered cigarettes. We reverse the final judgment because Principe's claims are barred by Florida's statute of repose for fraud.

## I.    Background[2]

### A. Principe's smoking history

In 1970, when he was sixteen years-old, Principe started smoking Parliaments, a filtered cigarette manufactured by PM. In 1975, after joining the Marines, Principe switched to another PM brand of filtered cigarette, Marlboro. In about 1980, Principe switched to Marlboro Lights, and finally, in the 1990s, to Marlboro Ultra Lights.

Each time Principe switched brands, he did so because he thought – based on PM's advertising and messaging – that he was progressing to a

---

[1] Engle was a class action case against the tobacco industry by Florida smokers who suffered smoking-related diseases between 1990 and 1996. After a partial trial, the Florida Supreme Court vacated the judgment and de-certified the class, but held that certain findings made by the Engle jury would be res judicata for class members who sought to pursue individual claims. Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

[2] The relevant facts are not in dispute.

safer cigarette. Ultimately, in 1998, Principe quit smoking. Shortly after Principe quit smoking, PM changed its public position about the risks and addictive nature of cigarettes. Contrary to its previous messaging, PM publicly admitted both that smoking causes cancer and that nicotine is addictive. Beginning in 1999, PM has stated publicly on its website that: "Philip Morris USA agrees with the overwhelming medical and scientific consensus that cigarette smoking is addictive and it can be very difficult to quit smoking, but this should not deter smokers who want to quit from trying to do so."

B. PM's about-face disclaimers

Beginning in the early 2000's, PM's website elaborated on this message:

> We agree with the overwhelming medical and scientific consensus that cigarette smoking causes lung cancer, heart disease, emphysema and other serious diseases in smokers. Smokers are far more likely to develop serious diseases, like lung cancer, than non-smokers. There is no "safe" cigarette.

PM's website, which contained links to, and quotations from, various publications from the U.S. Surgeon General and the National Cancer Institute, also made clear that the only way to reduce the risks of smoking-related diseases meaningfully was to quit smoking:

> To reduce the health effects of smoking, the best thing to do is to quit; public health authorities do not endorse either smoking

3

fewer cigarettes or switching to lower tar and nicotine brands as a satisfactory way of reducing risk. In fact, one of the required cigarette warnings for packages and advertisements in the U.S. is "SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health."

This message was amplified in a brochure produced by PM, in 2002, and distributed as inserts in major newspapers nationwide. In a section titled "Quitting Smoking," the inserts stated plainly: "The only proven way to reduce the health risks of smoking is to quit." The inserts also included this disclaimer: "Low-tar cigarettes evidence does not indicate a benefit to public health."

C. Principe's lawsuit and the resulting proceedings

PM's about-face disclaimers, though, had come too late for Principe. In 2016, eighteen years after he stopped smoking, Principe was diagnosed with laryngeal cancer. The following year, he underwent surgery that removed his larynx, leaving him with permanent breathing, eating and speaking problems.

On November 6, 2017, Principe filed this suit against PM[3] in the Miami-Dade County Circuit Court. Principe asserted negligence and strict liability

---

[3] Principe's lawsuit also named other tobacco manufacturers and the retailer where Principe alleged that he purchased his cigarettes. Our record reflects that Principe and certain of these other defendants resolved Principe's claims prior to trial, and only the case against PM is relevant to our adjudication.

claims, as well as the two fraud claims relevant here: fraudulent concealment and fraudulent misrepresentation. With regard to his fraud claims, Principe's operative complaint asserted, with significant detail and specificity, that PM engaged in a decades-long, deliberate campaign of deception regarding the health dangers of smoking. Principe's complaint asserts that PM "made numerous public statements and advertisements, including but not limited to, that smoking had not been proven to be injurious to health, that filtered cigarettes were safe, safer or less hazardous than non-filtered cigarettes and other similar statements and or advertisements."

In his claim for fraudulent concealment, Principe alleged that information regarding the health hazards of cigarettes was concealed by PM "for the purpose of inducing [Principe] to smoke, what [he] believed to be a safe, safer or less hazardous cigarette." In his claim for fraudulent misrepresentation, Principe alleged that PM "sustained a broad-based public campaign for many years disseminating misleading information and creating controversy over the adverse effects of smoking cigarettes, and the addictive nature of smoking cigarettes, intending that current and potential smoker [sic] would rely on the misinformation."

Among its affirmative defenses, PM alleged that Principe's claims are barred by Florida's statute of repose for fraud. At trial, the court deferred

5

ruling on PM's motion for directed verdict based on PM's statute of repose defense, and the jury found in Principe's favor on his two fraud claims.[4] The jury awarded Principe $360,000 for past medical expenses and $10.2 million in non-economic damages for future pain and suffering. The trial court then entered the orders appealed by PM in this case: the final judgment consistent with the jury verdict, the order denying PM's post-trial motion for judgment notwithstanding the verdict, and the order denying PM's motion for directed verdict upon which the trial court had deferred ruling.

II.    **Analysis**[5]

As it did below, PM argues that, as a matter of law, Principe's fraud claims are time-barred by Florida's statute of repose for fraud.

A. <u>Statutes of limitations and repose – generally</u>

A statute of limitations provides a specific time period after the accrual of a cause of action in which a plaintiff must bring his lawsuit. This time period generally begins upon the occurrence of the last element of the cause of action.[6] For example, a plaintiff must bring an action for negligence within

---

[4] The jury found in PM's favor on Principe's other claims.

[5] When, as in this case, the relevant facts are not in dispute, whether a claim is barred by the statute of repose presents a question of law that we review *de novo*. <u>Hess v. Philip Morris USA, Inc.</u>, 175. So. 3d 687, 692 (Fla. 2015).

6

four years of the occurrence of the last element for the tort of negligence: generally, the plaintiff's suffering injury as a result of the tortfeasor's breach of duty. § 95.11(3)(a), Fla. Stat. (2017).

Recognizing, though, that sometimes the last element of the cause of action may occur – and the cause of action may therefore accrue – several years after the defendant's act or omission, legislatures have enacted statutes of repose to ensure that a defendant's potential liability ends at some definite point, irrespective of when the cause of action may have accrued. Statutes of repose "run from the date of a discrete act on the part of the defendant without regard to when the cause of action accrued." Kush v. Lloyd, 616 So. 2d 415, 418 (Fla. 1992). For example, in the products liability context, it is possible that a plaintiff's injury (i.e., generally, the last element of the cause of action for product liability) may not occur until decades after the plaintiff buys the product. Thus, to ensure that a manufacturer's potential liability is not of indefinite duration, the Florida Legislature enacted a statute of repose for products liability claims that generally requires such claims be brought no later than twelve years after

---

[6] In pertinent part, section 95.031(1) of the Florida Statutes provides: "A cause of action accrues when the last element constituting the cause of action occurs."

7

the alleged defective product is first purchased, irrespective of when the plaintiff's injury occurs. § 95.031(2)(a), Fla. Stat. (2017).

B. <u>Florida's statutes of limitations and repose for fraud, and the *Hess* decision</u>

Florida's statute of limitations for fraud is four years. § 95.11(3)(j), Fla. Stat. (2017). Because a plaintiff can be the victim of fraud for some time without even knowing it, Florida provides that the limitations period for bringing a fraud claim does not begin until the wrongdoer's acts were, or should have been, discovered. <u>See</u> <u>Kush</u>, 616 So. 2d at 418. Significantly, for our analysis, Florida's legislature has combined fraud's limitations statute with a statute of repose requiring that any fraud action must begin within twelve years of the commission of the alleged fraud, irrespective of the date the wrongdoer's acts were, or should have been, discovered:

> An action founded upon fraud . . . must be begun within . . . [four years] . . . with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere . . . , but in any event an action for fraud . . *. must be begun within 12 years after the date of the commission of the alleged fraud*, regardless of the date the fraud was or should have been discovered.

§ 95.031(2)(a), Fla. Stat. (2017) (emphasis added).

Hence, per the fraud repose statute, "[if] the 'commission of the alleged fraud' does not take place within the statute of repose period, then the fraud

8

claim is extinguished." Hess, 175 So. 3d at 696. In order to prove a fraudulent

misrepresentation claim, a plaintiff must generally establish that: (i) the

defendant made a false statement of material fact; (ii) the defendant knew or

should have known the representation was false; (iii) the false representation

was made with the intent that it would induce the plaintiff to act; and (iv) the

plaintiff suffered resulting damages in reliance upon the representation.[7]

Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010).

Although a plaintiff in a tobacco case must establish each of these

elements for a fraud claim, Florida's Supreme Court has clarified that "the

date of the commission of the alleged fraud" in the fraud repose statute refers

not to the date that the fraud cause of action accrued, but rather, to the date

of the defendant's "wrongful conduct." Hess, 175 So. 3d at 698. In other

words, "for statute of repose purposes it is not necessary that the smoker

relied during the twelve-year repose period. Where there is evidence of the

*defendant's wrongful conduct* within the repose period, the statute of repose

---

[7] The elements of a fraudulent concealment claim are similar to that of
fraudulent misrepresentation, and are as follows: (i) the defendant concealed
or failed to disclose a material fact; (ii) the defendant knew or should have
known the material fact should be disclosed; (iii) the defendant knew its
concealment of or failure to disclose the material fact would induce the
plaintiff to act; (iv) the defendant had a duty to disclose; and (v) the plaintiff
detrimentally relied on the concealed information. R.J. Reynolds Tobacco
Co. v. Martin, 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010).

will not bar a plaintiff's [fraud] claim." Id. at 698 (emphasis added). And, for statute of repose purposes, the "wrongful conduct" consists of "a discrete act on the part of the defendant." Hess, 175 So. 3d at 698 (citing Kush, 616 So. 2d at 418).

Therefore, to defeat a defendant's statute of repose affirmative defense in a tobacco case premised upon the defendant's fraud, the plaintiff need only show that the defendant's "wrongful conduct" – i.e., the first three elements of the fraudulent misrepresentation cause of action and the first four elements of the fraudulent concealment cause of action – occurred prior to the expiration of the twelve-year repose period (see section II(D), *infra*). Put another way, in a tobacco case where the plaintiff is alleging fraud, the plaintiff will defeat a statute of repose defense if the plaintiff establishes that, during the twelve-year period prior to the filing of the complaint, the defendant knowingly made a materially false statement[8] with the intent that the statement be relied upon by smokers.

---

[8] Obviously, not just any materially false statement made by the defendant during the repose period satisfies Hess's requirement. The repose statute requires the action be brought within twelve years of "the commission of *the* alleged fraud." Hess, 175 So. 3d at 698 (quoting § 95.031(2), Fla. Stat.) (emphasis added). Therefore, to be actionable under Hess – dispensing with the element of reliance during the repose period – the defendant's materially false statement must not only be made within the repose period, but also must be similar in nature and related to the fraudulent statement upon which the plaintiff, outside the repose period, initially detrimentally relied.

10

C. <u>Whether PM engaged in "wrongful conduct" during the repose period</u>

Against this backdrop, we analyze this case and PM's statute of repose defense. It is important to note that we take no issue with the jury's factual findings and accept that Principe established the elements of both fraudulent concealment and fraudulent representation. What makes this case analytically challenging is the difficulty of applying the statute of repose given both the chronology of events and the time periods that elapsed between the occurrence of the elements of Principe's fraud causes of action.

PM's knowing misrepresentations and concealment were ongoing for decades and were not disclaimed until approximately 2000, when PM began publicly to renounce its prior false messaging regarding cigarette safety. Principe's reliance on PM's misrepresentations and concealment occurred in the 1970s and 1980s, long before PM's disclaimers. Principe stopped smoking in 1998, several years before PM's disclaimers, almost eighteen years before he was diagnosed with laryngeal cancer (and his cause of action accrued), and nineteen years before he filed his lawsuit.

Our inquiry, however, is not whether or when Principe's cause of action against PM accrued. Because the statute of repose runs from the date of "a discrete act on the part of the defendant" <u>Hess</u>, 175 So. 3d at 698 (citing <u>Kush</u>, 616 So. 2d at 418), the parties appear to agree that this case hinges

11

– and we limit our focus – upon whether PM engaged in "wrongful conduct" during the twelve-year repose period beginning on November 6, 2005, and ending on November 6, 2017, the date Principe filed his lawsuit. If, in our *de novo* review of the record, we conclude that PM engaged in "wrongful conduct" during the repose period, we must affirm. Hess, 175 So. 3d at 698. Otherwise, the statute of repose bars Principe's claims. § 95.031(2)(a), Fla. Stat. (2017).

Principe identifies two acts occurring during the repose period that he asserts constitute "wrongful conduct" so as to defeat PM's statute of repose defense: (i) the 2011 deposition testimony of PM's corporate representative, Dr. Peter Lipowicz, in an unrelated Florida tobacco case in which Dr. Lipowicz testified that PM believes that filtered cigarettes reduce the risk of cancer; and (ii) PM's continued manufacture and sale of cigarettes with filters during the repose period. We address each of the identified acts in turn.

D. Dr. Lipowicz's deposition testimony in an unrelated case

At trial, Principe presented the jury with deposition testimony, given in 2011, by Dr. Lipowicz, a PM vice president whom PM had designated as its corporate representative in an unrelated Florida tobacco case. Principe points to the following specific testimony as "wrongful conduct" (occurring within Principe's repose period):

12

Q: Does Philip Morris admit that filtered cigarettes are just as hazardous as unfiltered cigarettes?

A: No. We think that filtered cigarettes and the addition of filters on cigarettes, their research has shown that they have been shown to reduce the risk of cancer in smokers who smoke them. So we disagree with that.

. . . .

Q: Does Philip Morris admit that there is not sufficient evidence that there is any less danger with low-tar cigarettes than other cigarettes?

A: No. Philip Morris – you know, we believe that lower-tar cigarettes, the evidence shows that there is some reduction in cancer risk by using lower-tar cigarettes.

Principe asserts that Dr. Lipowicz's testimony – as PM's corporate representative – constitutes "wrongful conduct" because it is contrary not only to established science, but also to PM's own disclaimers made in 2000, stating that "there is no safe cigarette."  As mentioned above, to constitute "wrongful conduct" under Hess, the defendant's conduct must meet the first three elements of fraud: the defendant's statement must be materially false, knowingly made, *and* intended to induce another to act. (see Section II (B), *supra*).

We do not quarrel with Principe's assertion that Dr. Lipowicz's deposition testimony was knowingly false, thus establishing the first two elements of fraud.  We agree, though, with PM's argument that Dr.

13

Lipowicz's compelled testimony in a deposition in an unrelated case, was not intended to induce anyone to act. The testimony was not intended to induce nonsmokers to start smoking; it was not intended to induce smokers to smoke more cigarettes; nor was it intended to induce smokers of non-filtered cigarettes to smoke filtered cigarettes. Indeed, this deposition testimony in an unrelated case was not intended by PM to induce anyone to do anything. While the deposition was a public statement, as part of a public proceeding (and presumably it was offered into evidence in the case in which it was solicited as well as in this case), there is no evidence in this record – or any suggestion by Principe – that PM intended that the testimony induce anyone to act.

Principe argues that, under Hess, he need establish only that Dr. Lipowicz's testimony was false and made knowingly, without regard to whether the testimony was intended to induce reliance. We do not read the holding in Hess so broadly. As mentioned earlier, Hess instructs that, for statute of repose purposes, to determine "the date of the commission of the alleged fraud" we look to the discrete act of the defendant, without regard to the plaintiff's reliance on that act. Hess, 175 So. 3d at 698. Because the plain text of the repose statute expressly requires a defendant's "commission *of the alleged fraud*" to occur within the repose period, see § 95.031(2)(a), Fla.

Stat. (2017) (emphasis added), we cannot, consistent with the statute's plain language, read into <u>Hess</u> an implied excusal of another element of fraud, that is, proof that the defendant intended reliance upon a knowingly false statement.

A false statement in the abstract, even if knowingly made, does not constitute fraud; indeed, what makes a false statement fraudulent is the declarant's intent that others rely upon it. <u>Butler</u>, 44 So. 3d at 105. Hence, to give full effect to both the repose statute's text and <u>Hess</u>'s holding, we cannot conclude, as Principe invites us to do, that a defendant's knowingly false statement, made without an intent to induce, constitutes sufficient "wrongful conduct," thereby negating the statute of repose defense.

Thus, we conclude, as a matter of law, that Dr. Lipowicz's deposition testimony did not constitute the requisite "wrongful conduct" occurring within the repose period so as to defeat PM's statute of repose defense.

E. <u>PM's continued manufacture and distribution of filtered cigarettes – the</u> *Gentile* <u>decision</u>

Principe also asserts that the statute of repose is inapplicable because PM's manufacturing and distribution of filtered cigarettes during the repose period constituted a misrepresentation. Essentially, Principe argues that, for decades, PM's messaging touted the health benefits of filtered cigarettes,

and, because PM now concedes in its public messaging that filtered cigarettes are not safe, PM's continued manufacturing and distribution of filtered cigarettes is inherently wrongful conduct that defeats a statute of repose defense. Heavily relying on our sister court's opinion in Philip Morris USA Inc. v. Gentile, 281 So.3d 493 (Fla. 4th DCA 2019), PM responds by arguing that its above-referenced public disclaimers, published in 2000 and 2002, adequately and expressly disclaimed any prior fraudulent messaging, thus extinguishing Principe's fraud claims.

In Gentile, the plaintiff filed a wrongful death action on behalf of the deceased smoker who died from lung cancer in 2014. In his lawsuit, the Gentile plaintiff alleged, among other claims against PM, fraudulent misrepresentation and concealment. At trial, PM argued (as it did below in this case) that it was entitled to a directed verdict because the plaintiff had failed to prove that PM had made false or misleading statements during the repose period that began on May 12, 2003, twelve years prior to the suit's filing. Id. at 494, n.2. The trial court denied PM's directed verdict motion and, after the jury returned a verdict for the plaintiff, PM appealed. Id. at 494.

On appeal, PM argued that essentially the same public disclaimers, referenced in section I(B), *supra*, negated the Gentile plaintiff's virtually identical fraud claims. Id. at 496. The Gentile court, on *de novo* review,

16

reversed and remanded with instructions for the trial court to enter a directed verdict for PM on the plaintiff's fraud claims. The <u>Gentile</u> court determined that PM's continued marketing of light and ultra-light cigarettes during the repose period did not constitute a misrepresentation because PM had "adequately disclaimed any prior misrepresentations." <u>Id.</u> at 497.

It is well settled that a party cannot recover in fraud for alleged misrepresentations that have been expressly disclaimed. <u>See</u> <u>Mac-Gray Servs., Inc. v. DeGeorge</u>, 913 So. 2d 630, 634 (Fla. 3d DCA 2005). As described in section I(B), *supra*, in 2000 and 2002, PM issued its official position regarding smoking and health issues, clearly and unequivocally stating, among other things, that: "There is no safe cigarette. Cigarettes are addictive and cause serious disease in smokers. For those concerned about the health risks of smoking, the best thing to do is to quit."

<u>Gentile</u> held that these disclaimers adequately disclaimed any prior misrepresentations so that PM's continued marketing of light and ultra-light cigarettes during the repose period did not constitute a fraudulent misrepresentation. <u>Gentile</u>, 281 So. 3d at 496. Principe seeks to distinguish <u>Gentile</u> on the basis that the <u>Gentile</u> plaintiff alleged that the deceased smoker relied upon PM's misrepresentations regarding light and ultra-light cigarettes, as opposed to filtered cigarettes. Principe argues that, because

17

a portion of the disclaimers referenced in the <u>Gentile</u> opinion specifically reference "light" and "ultra-light" cigarettes – and the disclaimers do not specifically reference "filtered" cigarettes – <u>Gentile</u> is inapplicable.

We do not read <u>Gentile</u>'s holding as limiting the scope of PM's disclaimers only to light and ultra-light cigarettes. We agree with PM that there is no reasonable way to read into these disclosures the distinctions that Principe would have us make; that, by not specifically mentioning "filtered" cigarettes in the disclaimers, the disclaimers do not disclaim any prior misrepresentations regarding filtered cigarettes. PM's disclaimers did not suggest, either overtly or subtly, that a smoker's health concerns could be alleviated by smoking filtered cigarettes. To the contrary, the advice and messaging in the disclaimers are absolute and unequivocal: those with any health concerns should quit smoking because there are no safe cigarettes.[9]

We therefore conclude, as did the <u>Gentile</u> court, that PM's pre-repose period disclaimers adequately disclaimed the dangers inherent in cigarette smoking so that PM's continued manufacture and distribution of filtered

---

[9] In its order denying PM's directed verdict motion, the trial court concluded that PM had failed to preserve a "disclaimer defense." PM, though, did not allege, and on appeal does not argue a separate affirmative defense of disclaimer. As <u>Gentile</u> instructs, this Court may look to PM's disclaimers to determine whether PM engaged in wrongful conduct during the repose period.

cigarettes did not constitute a misrepresentation occurring during the repose period. Id. at 496-97.[10]

## III. Conclusion

The two acts identified by Principe that occurred during the repose period – Dr. Lipowicz's deposition testimony and PM's continued manufacture and sale of filtered cigarettes – do not constitute "wrongful conduct" as required by Hess. Therefore, because the record reveals no other wrongful conduct by PM occurring within the repose period, Principe's fraud claims are barred by Florida's statute of repose for fraud. We reverse the final judgment and the trial court's orders denying PM's motions for directed verdict and judgment notwithstanding the verdict, and remand for entry of a final judgment for PM.

Reversed and remanded, with instructions.

---

[10] This is not a case where PM's manufacture and sale of filtered cigarettes during the repose period are coupled with messaging that suggests a filter makes its cigarettes safer or healthier. Principe, rather, asks us to conclude that a cigarette containing a filter is, itself, a fraudulent misrepresentation. While cigarette filters do not make cigarettes safer or healthier, we are unable to conclude, based on our *de novo* review of this record, that either PM's manufacturing of filtered cigarettes, or its labelling a cigarette that has a filter as "filtered," is inherently fraudulent. Indeed, at oral argument, PM's counsel stated that its customers prefer a cigarette with a filter because a filter blocks small pieces of tobacco from reaching the smoker's mouth.